### Succession of BIBBINS. *
### No. 14947.

Court of Appeal of Louisiana. Orleans.

Oct. 29, 1934.

See, also, (La. App.) 152 So. 592, 777; (La. App.) 153 So. 340.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellant Metropolitan Ins. Co.

Jas. N. Brittingham, Jr., and James Wilkinson, both of New Orleans, for appellee Public Administrator.

JANVIER, Judge.

Albert W. Newlin, public administrator for the parish of Orleans, having, in the civil district court for the said parish, qualified as administrator of the estate of Albert Bibbins, brings this action in the succession proceedings and seeks to recover from Metropolitan Life Insurance Company the proceeds of two policies of insurance issued on the life of the said Bibbins.

In each of the policies defendant insurer agreed that, in the event of the death of the insured, payment of the full amount ($500 on each policy) would be made to the executor or administrator of the estate of the deceased.

At the time of the death of Bibbins the total amount due on the two policies had increased, because of maturity dividends and return premiums, to more than. $1,400.

Though, in its answer, the insurer denies certain averments made by the administrator, all of the essential averments are now conceded to be true, and the defense is that payment of the proceeds of the policies has already been made to one Lydia Harris, who presented to the insurer documents apparently showing that she had been appointed and had qualified as administratrix of the estate of Albert Bibbins in another court in another jurisdiction, to wit, the Twenty-Fourth judicial district court for the parish of Jefferson in this state.

The insurer now concedes that the said court in the parish of Jefferson was without jurisdiction and that the said judgment of that court appointing Lydia Harris administratrix was obtained through fraudulent misstatements and misrepresentations, but nevertheless maintains that, since it made payment in good faith to the said Lydia Harris as administratrix, relying on that appointment and on those proceedings, which appeared regular, the said payment constitutes a discharge of its obligations under the policies. It contends that there was nothing about those proceedings which gave indication of irregularity and that it had no actual or constructive knowledge of any such irregularity in the proceedings, or lack of

jurisdiction in the court, and that, therefore, it is protected by the laws of Louisiana and particularly by article 2145 of our Civil Code, which, in part, reads as follows:

"Payments in general can legally be made only to the creditor, or some one empowered by him. The debtor, however, is discharged by a payment made in good faith to one who is really not the creditor nor empowered by him, in the following cases: * * *

"2. Officers of Court; in Possession of Instrument. When the person, to whom the payment has been made, was at the time in possession of the evidence of the debt, under an order of a competent court, as syndic of trustee of creditors, as curator, executor, heir, or by virtue of any office or other trust, that apparently gives him the power to receive the payment."

The administrator counters with the contention that the said article affords no protection for three reasons: First, that by its own terms it is applicable only where the person to whom payment has been made was armed with an order from a competent court, the administrator pointing particularly to the word "competent"; second, that the article affords no protection where the payment has been made to an administrator, but limits its protection to those who have made payment to syndics, executors, et cetera; and, third, that in any event the article affords no protection where payment has been made under circumstances which should have put the payer on notice that the person receiving the payment was not actually qualified; in other words, that the article can be relied on only by one who has made payment believing in good faith that the court proceedings, under which the person who received the payment was apparently qualified, were in all respects regular and were had in a court having jurisdiction over proceedings of that character, and which, in fact, was vested with jurisdiction on those particular proceedings.

In the court a qua there was judgment in favor of plaintiff and defendant insurer has appealed.

We first devote ourselves to a study of the wording of the codal article (2145), upon which defendant relies for protection, and we notice that that article does not afford absolute protection to any one who makes such payment, but that protection results only where the payment was made "in good faith." We take this to mean that where payment is made under circumstances which

create knowledge that the person to whom payment is made is not actually authorized, though acting under an order apparently regular, such payment affords no protection against a demand by the person or officer actually entitled to receive the payment. Since the existence of legal "good faith" often depends upon whether or not there was constructive notice, we reach the conclusion that, where the known facts are sufficient to put an ordinarily prudent person upon his guard and to raise a doubt as to the actual authority of the person demanding payment, then payment made to that person, without further investigation, is not made in good faith and affords no protection against a demand by the person or officer actually authorized. We shall, then, examine the facts of which Metropolitan Life Insurance Company had knowledge, or should have had knowledge, when it made payment to the fraudulent administratrix acting under an "apparently" regular appointment of the court of Jefferson parish.

Bibbins died in New Orleans in the parish of Orleans on February 27, 1933. In June, 1933, Lydia Harris, to whom, as administratrix appointed in the parish of Jefferson, the payment was later made, submitted the policies and proofs of death and demanded payment. During July, 1933, or, at any rate, long before payment was made to Lydia Harris, Mr. James Wilkinson, as attorney for Clara Bibbins, the mother of the deceased, Albert Bibbins, called at the New Orleans office of the insurer company and advised that office of the possible right of the said mother, Clara Bibbins, and later wrote to the home office of the insurer in New York and asked for certain information, and, in effect, placed the said company on notice that the said mother had employed him "to claim her rights as beneficiary and heir of her deceased son."

Later Mr. Wilkinson wrote to the New Orleans office of the insurer and in effect stated that the proceeds of the policies should inure largely to Hyachinthe G. Bibbins, minor daughter of the deceased, and that, in his opinion, there should be an administration of the estate of the said Albert Bibbins.

On August 21, 1933, the New York or home office of the insurer notified its New Orleans office as follows:

"Since there appears to be no immediate prospect of an agreement being reached between the mother-in-law and the mother of the deceased, we have decided to pay to a duly appointed administrator of the de-

ceased's estate, which we are privileged to do under the policy terms."

This office memorandum shows that at least during August, 1933, if not earlier, the New York or home office of the insurer knew that there was a dispute as to the disposition of the proceeds of the policies and that this dispute concerned at least two rival claimants.

On September 26, 1933, Mr. Harry Nowalsky, associated with Mr. Wilkinson, one of the attorneys representing the present plaintiff, wrote to the New Orleans office of the insurer a letter reading as follows:

"Hugh M. Wilkinson
"Attorney & Counsellor-at-Law
"18th Floor Canal Bank Building
"Hugh M. Wilkinson
"A. Miles Coe
"Fred W. Oser
"Harry Nowalsky
                    "New Orleans, Sept. 26, 1933.
"Mr. William M. Brown, Manager,
    "Tulane District, Metropolitan Life Ins. Co.,
    "Canal Bank Building,
    "New Orleans, La.
"Dear Mr. Brown:
    "In re: Succession Albert Bibbins, No. 203–746—Division "A" Civil District Court.

    "I have been appointed by the court to take an inventory of all of the property left by the late Albert Bibbins. It has come to my attention that this party left a number of policies of insurance with your company, and in order to complete my inventory for the court, it is necessary that I have the policy numbers of the insurance carried by the deceased in your company together with the amount of insurance thereon.

    "I would therefore appreciate your furnishing me with this information by return mail.
        "With best wishes, I am,
            "Very truly yours,
"IN/m.        Harry Nowalsky. [Signed]."

Under date of October 4, 1933, Charles J. Mundy, as attorney for Lydia Harris, administratrix of the estate of Albert Bibbins, wrote the New York office of insurer making demand on behalf of the alleged administratrix and inclosing the two policies, the premium receipt book, and a certified copy of the letters of administration issued by the Twenty-Fourth judicial district court for the parish of Jefferson to Lydia Harris, administratrix. This letter of Mr. Mundy, purporting to have been sent on October 4th, was re-

ceived by the New York or home office of the insurer on October 9th, and, under date of October 11th, the New York or home office, without further investigation or inquiry, mailed to Mr. Mundy, as attorney for Lydia Harris, its letter containing check in settlement of the claim. This check was later cashed and the proceeds disposed of under further orders of the Twenty-Fourth judicial district court issued before the discovery of the fact that that court was without jurisdiction to hear the entire matter.

The lack of jurisdiction of that court resulted from the fact that Bibbins had died domiciled in the parish of Orleans.

Later, on appeal from another judgment in the same succession proceedings, we set aside the judgment appointing Lydia Harris as administratrix. See 152 So. 592. However, in the meantime the fund, as we have said, had been disposed of.

■ The question, then, is whether the insurer acted in good faith when it made payment to Lydia Harris.

There can be no doubt that almost from the time of the death of Bibbins the insurer knew that there were rival claimants to the fund, and there can be no doubt, either, that there was in the possession of the insurer, when it made payment, written evidence that two different courts had taken jurisdiction of the succession proceedings, because when, under date of October 9th, the insurer received from Mr. Mundy a letter purporting to have been written on October 4th and in which letter copy of the letters of administration issued by the Twenty-Fourth judicial district court were inclosed and which letters bore the court No. 10145, the said insurer had already received from Mr. Harry Nowalsky a letter advising that proceedings were pending in the civil district court and bearing No. 203746.

It may well be that, in the absence of a controversy, an insurer may, in good faith, not notice that two documents, one bearing the legend "No. 203,746, Division 'A,' Civil District Court," and the other bearing caption "No. 10,145, Twenty-Fourth Judicial District Court for the Parish of Jefferson," were not issued out of the same court; we cannot escape the conviction that, because of the controversy which was already known to exist, and in view of the somewhat acrimonious tone of the letter of the counsel for one of the rival claimants, the insurer should have noticed that the court proceedings referred to by Mr. Nowalsky were not the proceedings out of which Lydia Harris claimed

to have derived her authority. Very evidently the failure to notice that there were two courts and the failure to realize the true situation resulted from the fact that one claimant was communicating largely through the New Orleans office of the insurer, while the other was corresponding almost exclusively with the home or New York office.

But, if there was a misunderstanding due to a lack of proper co-ordination between these offices, the responsibility should rest upon the insurer, and the claimant rightfully entitled to the proceeds should not be prejudiced and made to suffer a loss which plainly has resulted from that lack of cooperation and co-ordination.

While it is true that nowhere is it made to appear that the officials of the insurer actually realized that there were two different court proceedings, the fact that almost from the time of the death of Bibbins there had been a conflict between rival claimants renders it impossible that we conclude otherwise than that the usual, ordinary care of a reasonably prudent business man would have disclosed the fact that there were two different courts involved.

Under such circumstances we conclude that the loss has resulted from the failure of the defendant's officials to notice facts, evidence of which facts was in its possession.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.