FOURNET, Justice.
 

 Disbarment proceedings were instituted against Charles J. Mundy on April 10, 1934, on charges of professional misconduct and after a number of exceptions and pleas filed by the defendant were disposed of, and numerous continuances were granted, some at the request of the attorney for the defendant and others at the request of the attorneys for the Board of Governors of the State Bar of Louisiana, a hearing before a Commissioner appointed by this court was completed on October 4, 1940. The Commissioner recommended that the defendant be disciplined in such a manner as this court may see fit.
 

 ■ The basis of the action against Mundy may be briefly stated to be that he did, with corrupt motive and fraudulent intent, invoke the jurisdiction of the 24th Judicial District Court for the Parish of Jefferson to open the succession of Albert Bib-bins, well knowing that said court was without jurisdiction because Bibbins’ residence was in New Orleans, where he had died on February 27, 1933, and that he left no property in the Parish of Jefferson, in order to assist his- client, Lydia Harris, an alleged creditor, whom he caused to be qualified as the administratrix of the succession upon furnishing a bond with a nonresident surety of doubtful financial responsibility, to illegally collect the proceeds of two life insurance policies issued on Bib-bins’ life by the Metropolitan Life Insurance Company, which policies comprised the entire-estate of the deceased, amounting to $1,448.34, leaving the parties at interest, and particularly a minor daughter, without recourse against either the administratrix, who has left the state, or her surety, who is not financially responsible. For a comprehensive statement of the allegations of the petition see the opinion of this court handed down on July 2, 1934, entitled In re Mundy, 180 La. 1079, 158 So. 563.
 

 The defense is that Bibbins had no fixed place of residence; that he lived as much in Jefferson Parish as in any other parish in the state; that decedent’s daughter, Hyacinth Glorious Bibbins, whom defendant is alleged to have defrauded, was an adulterous bastard, incapable of inheriting ; ■ and that, moreover, Lydia Harris, who was the decedent’s mother-in-law, had paid the premiums on the insurance policies in question for a period of thirty-one years, the aggregate amount of which exceeded
 
 *853
 
 the face value of the policies, and was, therefore, a privileged creditor, entitled to the proceeds of the policies in preference to Bibbins’ heirs and creditors.
 

 The record shows that Albert Bibbins, a negro, died at the residence of his sister and brother-in-law, 1723 Thalia Street, New Orleans, Louisiana, on February 27, 1933, leaving surviving him, in addition to his sister, a mother, Clara Bibbins, and a daughter, Hyacinth Glorious Bibbins, issue of his marriage to Rosie Figgins, contracted during the lifetime of his first wife, Louisa Harris Bibbins, from whom he was never divorced. He left no property other than three insurance policies, one with the Eagle Life Insurance Company, for an amount of less than a hundred dollars, payable to his daughter, the other two, in the amount of $500 each, with the Metropolitan Life -Insurance Company. These two policies contained no named beneficiary, but did contain what is commonly known as a facility of payment clause. The record reveals, however, that in the application made by Albert Bibbins to the Metropolitan Life Insurance Company he designated his first wife as the beneficiary. These policies were at the time of Bibbins’ death in the possession of Louisa’s mother, Lydia Harris, who had paid the premiums on them since the date of their issuance, a period of approximately thirty-two years, the payments amounting to $1,170, and therefore were in excess of the face value of the policies. Both of Bibbins’ wives predeceased him, and soon after his death Lydia Harris made proof of his deáth, surrendered the policies and receipt books to the local office of the insurance company, and applied for the payment of the amounts of the face value of the policies, plus the accrued interest. The company, in a letter dated June 16, 1933, instructed its local agent to advise the claimant, Lydia Harris, that because she was not the named beneficiary in the policies she could not give them a release if payment were made to her, and that she could not release them if payment were made under the facility of payment clauses, because she was not one of those named therein, being related to the decedent by marriage only. In the letter the local agent was also instructed to advise Lydia Harris that settlement would be made jointly with decedent’s mother, otherwise that settlement would only be made with the duly appointed administrator of the decedent’s estate. The agent, carrying out these instructions, had the claimant and decedent’s mother call at the local office and there obtained from them a written settlement agreement dated July, 8, 1933, whereby the proceeds of the two insurance policies were to be divided between the two, $1,000 going to Lydia Harris, the remainder to decedent’s mother. The terms of this agreement were submitted to the main office on July 10, 1933, for approval, which was given on July 14 thereafter.
 

 It appears that after this agreement was made the decedent’s mother, accompanied by her son-in-law, Benjamin Simons, consulted James Wilkinson, a prominent attorney of the New Orleans Bar, called at the local office of the company demanding the right to read the policies in order that he might properly advise his client, confirming his visit by a letter written on the same day, July 26, 1933. When this information was
 
 *855
 
 'transmitted to the main office, the local office was instructed by a letter dated August 2 to inform Wilkinson that if his 'client and the claimant could not agree on the distribution of the proceeds of the policies the company would pay the amount to a duly appointed administrator of decedent’s estate only. Wilkinson refused to accept anything less than half of the proceeds for his client, as the local office informed the main office by letter dated August 14, the local agent commenting therein as follows:
 

 “The attorney [Wilkinson] now notifies us that he is arranging to have an Administrator for the estate appointed. Lydia Harris, the mother-in-law of the insured, and claimant, states that she had paid all premiums on the policies since issue. Our Agent W. Bruchis, states that he collected the premiums from Lydia Harris since February, 1931 at which time he took over the present debit. The previous agent who is now in this office, J. Bruchis, states that he collected the premiums also from Lydia Harris. Lydia Harris is a feeble, old woman, and since she had maintained the premium payments since issue we feel, if it is possible, she should be protected, as it appears to us that the mother and her son-in-law, Simons, did not have any interest in the policies, whether they kept them in force or not, until after death and then wanted to take advantage of their relationship.” (Brackets ours.)
 

 The main office acknowledged receipt of this letter and, by letter dated August 21, instructed the local office to return the policies, with premium -receipt book, to Lydia Harris until such time as an administrator would be duly appointed. Of this Wilkinson was advised. It was at this time, apparently, that Mundy was employed by Lydia Harris to represent her, for he so advised the main office by letter dated August 22, which they acknowledged on August 28 following. On August 31, Mundy demanded the return of the policies and premium receipt book to his client in a letter addressed to the main office, he having refused to have any transactions with the local office because of previous treatment accorded him by the local representatives. On September
 
 7
 
 the main office notified the local agents that Mundy had been retained by Lydia Harris to represent her and again instructed that the policies and receipt book be returned to her. On September 8 Mundy opened Bibbins’ succession in Jefferson Parish. On September 16 following, the Public Administrator for the Parish of Orleans, at the request of Wilkinson, opened Bibbins’ succession in Orleans. On September 26 the notary appointed to inventory Bibbins’ succession in Orleans Parish requested certain information about the policies from the local office, which office in turn notified the main office, as is evidenced by the letter addressed to the local office on September 29, wherein this information was ordered given to the notary. It was on October 4, 1933, that Mundy notified the main office of his compliance with their request that an administrator be appointed, sending along with his letter the policies in question, the premium receipt book, and a certified copy of the letters of administration issued to Lydia Harris by the Jefferson Parish court. Consequently, at the
 
 *857
 
 time the main office mailed Mundy the check covering the face value of the policies and accrued interest thereon under date of October 11, 1933, they had full knowledge that Bibbins’ succession had been opened in the two parishes almost simultaneously. In fact, on the day on which the check was mailed to Mundy, the same person who had handled the matter wrote another letter to the notary appointed in Orleans Parish advising him that Lydia Harris had qualified as administratrix and that check in full settlement had been transmitted to her attorney, Mundy. Mundy acknowledged receipt of the check on October 13, and on the following day' the attorney for the Public Administrator in Orleans Parish wrote the main office in New York protesting this payment and advising the main office that the local office had agreed to stop the payment on the check. This the local office did not do until two days later, or by a telegram dated October 16, sent to the main office. By that time the check had been paid.
 

 The record also reveals that when the letter of October 11 addressed to the notary by the main office was received and shown to the attorneys for the Public Administrator for the Parish of Orleans, they, after searching vainly for the succession proceedings in the records of the District Court for Orleans Parish, called Mundy on the telephone with the view of ascertaining where the succession had been opened. Mundy refused to give them this information, stating on the witness stand that his reason for such refusal had been that he feared this information was’being sought for ulterior motives.
 

 Subsequently, on October 25, 1933, the final account of Lydia Harris, prepared by her attorney and reflecting her plan of distributing the amount received from the two policies, was filed and duly advertized in the newspapers, of Jefferson Parish. The account was homologated on November 14, 1933, and the funds distributed accordingly. After the payment of such items as costs of court and advertizing, Mundy was paid $250 as his fee, the remainder going to the administratrix as the creditor of the estate by reason of her payment of premiums to the insurance company. It was not until November 24,1933, that the Metropolitan Life Insurance Company intervened in the suit and appealed suspensively from the judgment of homologation, although the company had had knowledge since October 9 that the succession proceedings were pending in both parishes, long prior to the date the final account was filed and homologated.
 

 It appears from the testimony in the record that the attorneys for the public administrator, although knowing that Lydia Harris had been paid the amount of the two policies by the Metropolitan Life Insurance Company as the administratrix of the succession of Bibbins on October 11, 1933, did not know until about November 21 that Mundy had opened the succession proceedings in Jefferson Parish. By November 21 the account had been homologated and the money paid • out. Subsequently, the Public Administrator for the Parish of Orleans sued the Metropolitan Life Insurance Company to recover the full amount of the two policies. The case was
 
 *859
 
 submitted on an agreed statement of facts where it was admitted, among other things, “that Albert Bibbins never resided in and never was domiciled in Jefferson Parish” (neither Mundy nor Lydia Harris were made parties to this suit) and there was judgment rendered in the lower court on April 27, 1934, in favor of the Public Administrator, the judge being of the opinion that inasmuch as the representatives of the insurance company had, despite their knowledge of the rival claims and the opening of the two succession proceedings in different parishes, paid the amount to Lydia Harris, the company had, consequently, been in bad faith. The Court of Appeal for Orleans Parish affirmed this judgment, stating that “The question * * is whether the insurer acted in good faith when it made payment to Lydia Harris.” Answering this question the court commented as follows:
 

 “There can be no doubt that almost from the time of the death of Bibbins the insurer knew that there were rival claimants to the fund, and there can be no doubt, either, that there was in the possession of the insurer, when it made payment, written evidence that two different courts had taken jurisdiction of the succession proceedings, because when, under date of October 9th, the insurer received from Mr. Mundy a letter purporting to have been written on October 4th and in -which letter copy of the letters of administration issued by the Twenty-Fourth judicial district court were inclosed and which letters bore the court No. 10145, the said insurer had already received from Mr. Harry Nowalsky [the notary appointed to inventory the decedent’s estate in Orleans Parish] a letter advising that proceedings were pending in the civil district court [of Orleans Parish] and bearing No. 203746.” Succession of Bibbins, La.App., 157 So. 139, 14L (Brackets ours.)
 

 The defendant now contends that inasmuch as the basis of the action against him was-the concealment of the proceedings to defraud decedent’s legitimate child, since there was no evidence adduced at the hearing before the Commissioner to establish the daughter’s legitimacy, the record, on the contrary, showing that she is an adulterous bastard, the cause of action has failed and he should be exonerated.
 

 The gravamen of the offense with which the defendant is charged being his concealment of the proceedings to aid his client, Lydia Harris, it is immaterial who the adverse claimants were.
 

 Article 929 of the Code of Practice provides that:
 

 '“The place in which a succession is opened is, and in future shall be held to be,, as follows, notwithstanding any former law to the contrary:
 

 “In the parish where the deceased resided, if he had a domicile or fixed place of residence in the State;
 

 “In the parish where he left landed property, if he had neither domicile nor place of residence in the State; or in the parish in which it appears from the inventory that his principal property was situated, if he had property in several parishes ;
 

 
 *861
 
 “In the parish where he died, if he had no certain nor any fixed property.” See, also, Article 935 of the Revised Civil Code.
 

 It necessarily follows that under the facts of this particular case the court that had jurisdiction of the succession of Albert Bibbins was the Parish of Orleans. But we cannot say that Mundy opened the succession in Jefferson Parish for the purpose of concealing the proceedings since he alleged in his petition that the deceased had no fixed place of domicile or'residence (in this he is borne out by the record and the report of the Commissioner) and that he had died in Orleans Parish. At the hearing had before the Commissioner Mundy stated that he was of the opinion the Parish of Jefferson had as much jurisdiction in this case as the Parish of Orleans had, and that his only reason for opening the succession in Jefferson Parish was because the required deposit to open a succession in Jefferson Parish was much less than that required in Orleans Parish and that, since he had to advance the sum, he preferred to open the succession in the parish where he would be required to advance the lesser amount.
 

 While it may be said that Mundy’s actions in this case were sufficient to arouse the suspicions of the Committee on Professional Ethics and Grievances, nevertheless, we think that they have failed to establish the charge that the defendant’s actions in this case- were predicated on corrupt motives with that reasonable certainty required by the law to justify disbarring or disciplining the defendant.
 

 For the reasons assigned these disbar.ment proceedings against Charles J. Mundy are dismissed,
 

 O’NIELL, C. J., does not take part.