(83 South. 39)

No. 22352.

FLANAGAN v. LAND DEVELOPMENT CO. OF LOUISIANA, Ltd.

(June 30, 1919.    Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

1. EXECUTORS AND ADMINISTRATORS ⊚�き10— JURISDICTION TO APPOINT ADMINISTRATOR IN PARISH OF DOMICILE.

Where deceased lived in the city of New Orleans for several years prior to her death, and her home and domicile were there, and she went to another parish temporarily to visit friends and receive their ministrations during her illness and there died, *held,* that she had no intention to abandon her residence and domicile, and the civil district court of New Orleans had jurisdiction to appoint an administrator and later an executor under a will.

2. EXECUTORS AND ADMINISTRATORS ⊚⟿29(2) —COLLATERAL ATTACK UPON FORMALITIES OF APPOINTMENT AND QUALIFICATION.

Where the court had jurisdiction to appoint plaintiff suing to set aside a tax sale as administrator and later as executor, the right to maintain the suit could not be collaterally attacked on the ground that the legal formalities in plaintiff's qualifications and appointment were not observed, and that Acts 1870, No. 87 and 1877, No. 74, under which appointments were made, violated Const. 1879, arts. 14, 15, 46, and Const. 1898, arts. 16, 17, 48.

3. EXECUTORS AND ADMINISTRATORS ⊚⟿129(3) —RIGHT TO SUE TO ANNUL TAX SALE OF ESTATE PROPERTY.

An administrator or executor has the right to sue and stand in judgment in an action to annul a tax sale of property of the estate he represents.

4. TAXATION ⊚⟿805(4)—THREE-YEAR LIMITATION INAPPLICABLE WHERE PLAINTIFF'S TENANT IN POSSESSION UNTIL SUIT TO CANCEL TAX TITLE.

In an administrator's suit to set aside a tax sale where plaintiff's tenant remained in possession of the property in dispute under its tax title for three years prior to the suit, the prescription of Const. 1898, art. 233, is inapplicable.

5. MUNICIPAL CORPORATIONS ⊚⟿980(4)—INSUFFICIENCY OF NOTICE OF TAX SALE BY PUBLICATION WHERE SERVICE ON AGENT COULD BE HAD.

Where the owner of real property, although outside of the parish, had an authorized representative living in the property who could have been served with notice of city tax sale, publication of notice to "unknown owners" only was insufficient. Act No. 224 of 1910.

6. MUNICIPAL CORPORATIONS ⊚⟿982—SUFFICIENCY OF INTEREST TO SET UP WANT OF NOTICE OF SALE.

It cannot be urged that plaintiff seeking to set aside a city tax sale has no interest to set up want of notice thereof because the property had been previously adjudicated to the state for taxes and its title registered, since there could be no legal adjudication of the property for less than the amount of the taxes, and the city could not sell the state's property, and the defendant's redemption from state tax sale

containing no act of subrogation to defendant inured to the benefit of plaintiff.

7. TAXATION ⊚⇒813, 814(2)—REIMBURSEMENT OF PURCHASER ON SETTING ASIDE TAX SALE.

Where a void tax sale is set aside, Act No. 170 of 1898, § 67, allowing the purchaser rents and revenues upon "redemption," is inapplicable, but purchaser shall be reimbursed for price of tax sale, interest, and costs as provided by Const. art. 233.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by Peter J. Flanagan, Public Administrator, as administrator of the estate of Emma Williams, deceased, against the Land Development Company of Louisiana, Limited, to annul a tax sale, in which by amended complaint the subsequent discovery of deceased's nuncupative will and plaintiff's having been duly appointed dative testamentary executor thereunder were set forth. Judgment for plaintiff, annulling the tax sale, and reserving "all of said claims and counterclaims to be fixed and adjusted on said accounting," and defendant appeals. Modified and affirmed.

Theo. Cotonio, of New Orleans, for appellant.

Loys Charbonnet and F. Rivers Richardson, both of New Orleans, for appellee.

DAWKINS, J. The public administrator for the parish of Orleans applied to the court below and was appointed administrator of the estate of a colored woman, Emma Williams, widow of James V. Martin, deceased. Thereafter, the said administrator brought this suit to annul a tax sale to defendant of certain real property situated in the city of New Orleans. The grounds of nullity alleged are:

(1) Insufficient description in the assessment;

(2) That the property was advertised for sale on Tuesday instead of Saturday;

(3) That the advertisement extended over a greater period than 30 days;

(4) That no lawful notice of delinquency was served on the owner, Emma Williams; and,

(5) In the alternative, if it should be held that the said sale was not null for the reasons mentioned, plaintiff, as the administrator of the estate of said former owner, is entitled to redeem said property because no lawful notice of the purchase thereof has been given, as required by Act No. 224 of 1910.

Defendant appeared and excepted to plaintiff's capacity to stand in judgment on numerous grounds, among which were: That, at the time of the filing of the suit, plaintiff had not taken the oath as administrator required by law; that the appointment was null because not preceded by proper legal formalities; that plaintiff was not an heir or creditor, or in any manner related to deceased; and that the court below was without jurisdiction to make the appointment, in that, at the time of her death, Emma Williams was a resident of the parish of Terrebonne, where she died. Further, in the alternative, that at her death said deceased left a nuncupative will by public act, in which she designated a testamentary tutor for her minor children, who had the right to administer said estate, and, in event of his failure or refusal to act, a dative testamentary executor should have been appointed.

The said exception further alleged, in the alternative, that the appointment of Flanagan as administrator was void because the Acts No. 87 of 1870 and No. 74 of 1877, purporting to authorize appointment of a public administrator for the parish of Orleans, violate articles 14 and 15 of the Constitution of 1879, and articles 16 and 17 of the Constitution of 1898, as well as the Constitution of 1868, in that the said acts, in so far as they purport to vest in the Governor the power of

appointing said officer, constitute an attempt to give to him powers and functions properly belonging to the judicial department of the government of the state. Further, that said acts violate article 48 of the Constitution of 1898, article 46 of the Constitution of 1879, and similar provisions in the Constitution of 1868, prohibiting the passage of special or local laws regulating the practice or jurisdiction of courts.

Defendant also pleaded the exception of no cause of action.

All of the above exceptions having been overruled, defendant pleaded the prescription of three years under article 233 of the Constitution of 1898, which plea was referred to the merits, and an answer was then filed denying generally the allegations of fact contained in the petition. Further answering, defendant denied the right of Emma Williams, or the plaintiff as her administrator, to redeem the property under Act No. 224 of 1910, on the ground that said act was also unconstitutional.

In the alternative, defendant averred that it had paid the state and city taxes upon said property for several years, had also made extensive repairs, and that, in the event the sale was annulled, it should recover for said expenditures, with 10 per cent. per annum thereon from date of payment under the law governing redemption of property purchased at tax sales.

The property in dispute was later, on motion of plaintiff, judicially sequestered, and subsequently bonded by defendant. Thereafter, on March 20, 1916, plaintiff filed an amended petition, in which it was set out that, since the filing of the original suit, it had been discovered that the deceased, Emma Williams, had left a last will in nuncupative form by public act, in which no executor had been named; that plaintiff had applied to the district court for the parish of Orleans and been duly appointed dative testamentary executor, after complying with the requisites of law. He therefore asked to be made party plaintiff, as such executor, in this suit.

Defendant excepted to the amendment upon many grounds, among the contentions made being that Flanagan had appeared in his individual capacity, and was therefore without interest; that, if it be claimed that same was filed in his representative capacity, it came too late; that the amendment substitutes a new party plaintiff; that it changed the issues; and that plaintiff could not appear in the dual capacities of administrator and executor. The pleading then proceeds to reiterate all of the exceptions previously urged against plaintiff as administrator.

The evidence had been submitted and the case laid over for argument at the time the amendment was filed. On May 22, 1916, according to the minutes, the cause was continued for argument on May 23d, and, on the latter date, again continued until June 1st. On June 1st appears the following minute entry:

"This case was called, and after further hearing, was continued until June 19, 1916, for argument."

On June 19th, there appears the following further minute entry, to wit:

"This case was called, and after hearing offers of evidence, was argued by F. Rivers Richardson for plaintiff and Theodore Cotonio for defendant, Mr. J. A. Woodville to argue Tuesday, June 20, 1916, at 10:30 a. m."

The next minute entry, under date of November 22, 1916, shows that a judgment for plaintiff was amended and signed.

From a judgment in favor of plaintiff, annulling the tax sale, and reserving "all of said claims and counterclaims to be fixed and adjusted on said accounting," the defendant appeals.

Opinion.

[1] The first question to be disposed of herein is that of jurisdiction in the court be-

low; for, if it was without jurisdiction to appoint the plaintiff administrator in the first instance, or later as dative testamentary executor, the entire proceedings by which he attempted to acquire the capacity to represent the estate of deceased were null, and may be attacked at any time and under all circumstances. R. C. L. p. 74 et seq. (vol. 11) verbo Executors and Administrators. We find, however, that the court below was seized of jurisdiction. The deceased, Emma Williams, had lived in the city of New Orleans for several years prior to her death, and her home and domicile were there. On account of ill health, she had temporarily gone to visit friends in the parish of Terrebonne, where she might receive their kind ministrations in her sickness, and, we think, had no intention of abandoning her residence and domicile, though she died of the malady of which she was suffering in that parish.

[2] Having found that the lower court had the jurisdiction to appoint the administrator, and later the executor, defendant's other exceptions must fall for the reason that they cannot be urged in this collateral manner. Vinet v. Bres, 48 La. Ann. 1260 et seq., 20 South. 693, and authorities there cited.

### Exception of No Cause of Action.

[3] An administrator or executor has the right to sue and stand in judgment in an action to annul a tax sale of property belonging to the estate which he represents. Succession of Williams v. Chaplain, 112 La. 1075, 36 South. 859.

### Prescription of Three Years under Article 233 of Constitution.

[4] The record shows that plaintiff's tenant remained in possession of the property in dispute under its tax title for three years prior to the filing of this suit, and hence the prescription of article 233 of the Constitution is inapplicable. Carey v. Cagney, 109 La. 77, 33 South. 89.

### On the Merits.

[5, 6] On the merits of the case, we quote from the "reasons for judgment" of the court below, which, we think, succinctly and fairly cover the matter, to wit:

"On the merits, it appears that the only notice of the city tax sale, herein attacked, was by publication of notice to 'Unknown Owners.'

"The defendant was then absent from home, sick, but she had an agent, authorized to represent her, living in the property, i. e., the property that had been assessed in her name, and that was sold by the city as aforesaid. Notice at the domicile, i. e., the property assessed, could have been served on her agent.

"The failure to give notice is fatal to the tax sale that was made.

"Defendant's counsel argues that plaintiff has no interest to set up the want of notice because of the city tax sale of August 12, 1910, because the property had been adjudicated to the state for the taxes of 1908, and the state's title registered July 10, 1909.

"The retort of plaintiff to this is that, under the jurisprudence, the city could not in the year 1910 sell for its taxes, for the year 1908, property which in 1909 had been adjudicated to the state for the taxes of the same year, and stood of record in the name of the state. There could be no legal adjudication of the property for less than the amount of the taxes, and certainly the city could not sell the state's property.

"This difficulty in defendant's way, no doubt, inspired the redemption of October 1, 1912, from the state, the certificate of which recites that 'Widow Emma J. Martin,' 'as owner,' having redeemed the property, is subrogated to all the rights of the state.

"This certificate was put in evidence by defendant, and no doubt defendant paid to the state for said redemption, but it contained no act of subrogation (to defendant), and the redemption inured to the estate of said Emma Martin, whose executor is the plaintiff in this suit.

"See Act 41 of 1912, p. 49; Cambon v. Lapene, 40 La. Ann. 557, 4 South. 165."

[7] Defendant contends that it cannot be compelled to account for the rents and revenues of the property since the tax sale, and that the judgment annulling the said sale cannot become effective until it has been reimbursed the expenditures for and on the

purchase of the property, taxes, etc., with penalties. The defendant did not allege or pray for any specific amount on these scores, and the judgment of the lower court relegates the parties to another action for the settlement of these matters. However, we may say, for the guidance of the court below in determining these issues, that the section 67 of Act No. 170 of 1898, relied upon by defendant as the basis of its claim to the rents and revenues, applies only where the property is "redeemed" under a valid tax sale, and not in a case where the sale is found to be void for want of legal notice, as in the present instance. The section of the act (170 of 1898) referred to reads as follows:

"Be it further enacted, etc., that from the date of recording said tax deed, all the rents and revenues of the property therein conveyed shall belong to the purchaser, and shall be paid to him, and all taxes thereon, shall, after that date, be assessed to and shall be paid by him, until the said property be redeemed. If redeemed, the person redeeming shall pay all the taxes assessed upon said property, subsequent to the tax sales. * * *"

Where the tax sale is set aside for radical nullities, there is no redemption, and hence the condition contemplated by the law just quoted does not exist. The owner was never divested of his title, and there can be no forfeiture of his property in the revenues.

With reference to the reimbursement of the price of the tax sale, interest and cost, the Constitution (article 233), itself provides:

"No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent. per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser; provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale, or dual assessments."

It therefore follows that no judgment rendered herein can become effective until the defendant is reimbursed the expenditures of the nature mentioned in this article of the Constitution. The record discloses that defendant has expended the following sums on that score, to wit:

| | |
|---|---|
| August 12, 1910, purchase price at tax sale | $63 35 |
| August 12, 1910, costs of passing and recording deed | 5 00 |
| April 17, 1911, city taxes 1909 | 56 40 |
| November 10, 1911, city taxes 1910 | 54 20 |
| November 15, 1911, city taxes 1911 | 44 90 |
| October 10, 1912, city taxes 1912 | 44 65 |
| June 18, 1915, city taxes 1913 | 54 95 |
| September 19, 1912, state taxes 1908 | 35 11 |
| September 19, 1912, state taxes 1909 | 22 80 |
| September 19, 1912, state taxes 1910 | 19 92 |
| January 2, 1912, state taxes 1911 | 13 03 |
| September 19, 1912, state taxes 1912 | 12 90 |
| April 6, 1914, state taxes 1913 | 19 28 |
| April 21, 1915, state taxes 1914 | 19 34 |
| December 8, 1915, state taxes 1915 | 13 13 |

Defendant should recover judgment in reconvention against plaintiff for the sums just above set out, with 10 per cent. per annum interest on each item from the date of payment until paid, and the judgment annulling said sale cannot become effective until such payment, and until any sum or sums subsequently paid for taxes with similar interest from date of payment have been refunded to defendant.

The claims and counterclaims for rent, repairs, etc., are not sufficiently established in the record to be disposed of at this time.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby amended so as to allow defendant to recover of the plaintiff in reconvention the following sums with interest thereon, to wit:

$68.35 with 10 per cent. per annum interest from August 12, 1910, until paid.

$56.40 with 10 per cent. per annum interest from April 17, 1911, until paid.

$54.20 with 10 per cent. per annum interest from November 10, 1911, until paid.

$44.90 with 10 per cent. per annum interest from November 15, 1911, until paid.

$44.65 with 10 per cent. per annum interest from October 10, 1912, until paid.

$54.95 with 10 per cent. per annum interest from June 18, 1915, until paid.

$35.11 with 10 per cent. per annum interest from September 19, 1912, until paid.

$22.80 with 10 per cent. per annum interest from September 19, 1912, until paid.

$19.92 with 10 per cent. per annum interest from September 19, 1912, until paid.

$13.03 with 10 per cent. per annum interest from January 2, 1912, until paid.

$12.90 with 10 per cent. per annum interest from September 19, 1912, until paid.

$19.28 with 10 per cent. per annum interest from April 6, 1914, until paid.

$19.34 with 10 per cent. per annum interest from April 21, 1915, until paid.

$13.13 with 10 per cent. per annum interest from December 8, 1915, until paid.

It is further ordered and decreed that this judgment take effect from and after payment of the amounts just mentioned, together with any sum or sums subsequently paid for taxes, with 10 per cent. per annum interest on all sums from the dates of such payments, and that the rights of both plaintiff and defendant to sue upon all other claims and counterclaims be reserved. In all other respects, the judgment appealed from is affirmed; appellee to pay the costs of this appeal, and the costs of the lower court to be paid by defendant.