ROGERS, J.
 

 Plaintiff brought this suit to compel defendant to execute in his favor a redemption deed of the property described in his petition, to recognize the tender he had made of the taxes, interest, and penalties, and, in default of the execution of said redemption deed within a delay to be fixed by the court, that the tax sale be declared rescinded and canceled and the said property be decreed to be redeemed from said -sale.
 

 The suit was defended on the ground that plaintiff had not made a legal tender in the manner required by law and that the period for redemption hacf expired prior to the date ■of the attempted tender.
 

 The judgment of the district court was in favor of plaintiff, and defendant appealed.
 

 In August, 1922, 1,000 acres of land owned by plaintiff in the parish'of Tangipahoa were adjudicated to the defendant for the unpaid taxes for the year 1921. The deed evidencing this adjudication was filed for record in the office of the registrar of conveyances of the parish on September 1, 1922, and it was actually recorded in the conveyance records on September 6, 1922.
 

 On September 5, 1923, plaintiff, who is a resident of New Orleans, journeyed to Ponchatoula, where defendant resides, and, finding defendant near the railroad depot in said town, shortly after 8 o’clock in the morning, tendered to him $929.03 to cover the taxes, interest, and penalties, and a redemption deed, which he requested him to execute. Defendant, without counting or examining the money, refused the tender, statiiig that “we” (meaning- his attorney and himself) “had talked, the matter over yesterday and had decided not to sign the deed.” Defendant then walked away, and plaintiff, in company with a Mr. Kleinpeter, walked after him. Plaintiff caught up with defendant near a drug store, when the discussion was renewed in the presence of Mr. Kleinpeter, a Mr. .Strader, who was standing in front of the drug store, and the attorney of defendant, who had approached in the meantime. Mr. Andrew Stanga and Mr. Jake Bogue also heard portions of the discussion. There is some dispute as to what occurred in this discussion, but it is clear, from a careful consideration of the testimony of all the witnesses, that plaintiff’s tender was again refused for the reason, primarily, that defendant and his attorney had determined to stand on the legal proposition that the period for redemption had expired on September 1, 1923, the date of the filing of the tax deed in the conveyance office, instead of September 6, 1923, the date of its recordation in the con
 
 *247
 
 veyance records. There is no doubt that some reference was made by defendant’s attorney, as he and the defendant walked away, to the fact that the money was not legal tender, but it does not appear that this was brought clearly and directly to plaintiff’s attention, or that the tender was refused on that ground On the contrary, when defendant was on the stand, on cross-examination, he testified as follows:
 

 “Q. 'Did you look at the money Mr. MacLeod had there? A. Not very much.
 

 “Q. Can you tell what any one of those bills were? A. Yes, sir; I saw between three-and seven $100 bills and one $1 bill.
 

 “Q. Were the $100 bills national bank notes, treasury notes, Federal Reserve Bank notes or what? A. I don’t know. It looked like good money to me. That is ¿11 I can answer. As to the amount exactly, or the kind of bills, I couldn’t answer that. * * *
 

 “Q. Ordinarily, if anybody would offer you that kind of money to redeem a tax title, or for any other purpose, you would take it, wouldn’t you? A. Yes, sir; in some form and some kinds.
 

 “Q. Was that the kind of money that is in ordinary circulation? A. I don’t know about that. I think so. Looked like ordinary money to me.
 

 “Q. It looked like the same kind of money you pass every day? A. Yes, sir.
 

 “Q. You would have been perfectly willing to take it, had your counsel not told you that it was not legal tender money? A. Yes, sir; I would have.” ■
 

 While plaintiff was not specifically notified that the tender was refused -because it was not made in legal money, it is apparent that he did catch some remark about illegal money made by some one as defendant and his counsel moved away. This caused him to become uneasy to the extent that he called at the First State Bank, and presented two of the Federal Reserve Bank notes to the manager, Mr. J. H. Strickland, to ascertain if they were not good money, to which inquiry Mr. Strickland replied that, if they were not, he had a lot just like them in the bank. It further appears. that Mr. Strickland was going to send off some money that, day, and, as an accommodation to him, plaintiff exchanged his bills of large denominations for bills of smaller denominations. After plaintiff left the bank, he again sought defendant and his attorney, with a view of persuading them to reconsider their determination not to allow the redemption of the ^property, but he was unable to find either. The door of the attorney’s office was locked, and defendant, apparently, had left town. Plaintiff then got in touch with his own attorney at Amite, and upon his advice proceeded on the same day to that town, and made a tender and deposit of the money with the tax collector, as provided by Act 170 of 1S9S, § 65, and then filed this suit.
 

 There is no merit in the defense of want of legal tender. We are satisfied that this plea was an afterthought, and not made in good faith'. The tender was peremptorily, refused because defendant was of the opinion that the delay for redemption had expired, and he was in a position to maintain his claim of ownership of property worth from $15,000 to $25,000 under an adjudication made to him for the paltry sum for which he bid it in at the tax sale. In these circumstances, no tender at all was necessary, since the law does not demand any one to do a vain and useless thing, and a formal tender is not required, where it would be made to no purpose. Moreover, the money tendered was for the most part Federal Reserve Bank notes and other notes constituting a part of the common currency of the country, and ordinarily passed as money. .Such notes have been invariably recognized as a good tender for money, unless specially objected to. U. S. Bank v. Bank of Ga., 10 Wheat. 338, 6 L. Ed. 343. See, also, Rose’s Notes to the cited case, p. 248, printed in said 6 L. Ed. And, as heretofore stated, the tender made by plaintiff to defendant was not directly and specifically refused because it was not made in legal tender money.
 

 
 *249
 
 Having disposed of the question of the legality vel non of plaintiff’s tender, we pass to the consideration of the real issue in the case, which arises from defendant’s plea that the tender was made after the delay allowed for redemption had expired.
 

 Prior to the adoption of the Constitution of 1921, it was a disputed question as to when the year provided for the redemption of tax sales began to run. The language of the former Constitutions was that the property sold should be redeemable' at any time “for the space-of one year.” In order to settle the question,' the Constitution of 1921 established a definite date from which the redemptive period should commence. Section 11 of article 10 of said Constitution provides:
 

 “The sale shall be without appraisement and the property sold shall be redeemable at any time during one year from
 
 date of recordation of the tax sale,
 
 by paying the price given, including costs and twenty per cent.. thereon.” (Writer’s italics.)
 

 The tax deed herein w.as filed for registry on September 1, 1922, but it was not actually inscribed in the conveyance records until September 6, 1922.
 

 Defendant contends that the tax deed was recorded when it was filed and indorsed by the registrar of conveyances. Plaintiff, on the other hand, contends that the deed was not recorded until it was actually inscribed in the conveyance records.
 

 Defendant cites, in support of his position, Civ. Code, arts. 2264, 2265, and 2266. These articles are in pari materia, and refer to sales, contracts, and judgments. They do not apply to tax redemption deeds, which are neither sales, contracts, nor judgments. The words “filing” and “recording” are not synonymous,'and they were not so regarded by the redactors of the Code. This is shown by the fact that under article 2266, referred to supra, they found it necessary to. specifically provide that the recording of the sales, contracts, and judgments set forth in the preceding articles “shall have effect from the time when the act is deposited in the proper office and indorsed by the proper officer.” The original article (3347) governing mortgages, however, made them effective as against third persons only after their recordation in the parish where the property to be affected is situated. This provision has now been changed by Act 215 of 1910, so as to* make mortgages, like sales, contracts, and judgments, effective from the date of filing.
 

 The redemption o’f tax sales is governed by the special constitutional provision, and not by the codal articles. The framers of the Constitution saw fit to provide that the period of redemption should not begin to run until the date of the recordation of the tax deed, and they had that right. Doubtless they believed that the tax sale was not completed or consummated until such recordation had been made. Had they desired to fix the beginning of the redemptive period at the date of -the filing of the tax deed, they could, and would, have so provided. They did not do so-, and we must give effect to the constitutional provision as it is written.
 

 “Recording means the copying of the instrument to be recorded into the public records in a book kept for that purpose by or under the superintendency of the officer appointed therefor.” 23 R. C. L. 182, and authorities cited.
 

 Our conclusion is, therefore, that the period for the redemption of property .sold for delinquent taxes begins to run from the date of the recordation of the tax deed; i. e., from the transcription of the deed on the conveyance records,
 

 For the reasons assigned, the judgment appealed from is affirmed, at appellant’s cost.
 

 O’NIELL, C. J., concurs in the decree.
 

 ST. PAUL, J., dissents.