53 So.2d 210 (1951)
PRAMPIN et al.
v.
SOUTHERN CHEMICAL WORKS, Inc., et al.
No. 19699.
Court of Appeal of Louisiana, Orleans.
June 12, 1951.
*211 George P. Lessley, New Orleans, for appellant Joseph M. Cortinas.
Fred G. Veith, New Orleans, for appellant Dixie Land Co.
Connolly & Simoneaux, New Orleans, for appellees.
*212 REGAN, Judge.
Plaintiffs, Albert and Achille Prampin, alleging themselves to be the title owners of Lots 1 and 2 in Square No. 4337 of the Third District of the City of New Orleans, bounded by Bayou St. John (Preaux), Vienna, Delery and Dublin Streets and property contiguous thereto, all contained within fences, instituted this suit against defendants, Southern Chemical Works, Inc., of which Joseph M. Cortinas was President, and Joseph M. Cortinas, individually, endeavoring to nullify and void the title of the Southern Chemical Works, Inc., which acquired Lots 1 and 2, at a tax sale of the City of New Orleans, for the unpaid taxes for the year 1932, and the "patent" procured by Joseph M. Cortinas issued to him under the terms of Act 237 of 1924, as amended, LSA-RS 47:2189 et seq., covering Lots 1 and 2, from the State of Louisiana, by virtue of an adjudication to it for the unpaid State Taxes for the year 1932.
The record shows that Albert, Achille, Charles, Ferdinand and Harry Prampin were the owners in indivision of the foregoing property in 1931 by virtue of a judgment putting them in possession as heirs of their mother of Lots 1 and 2 and certain other property "all under fence." After the aforementioned tax sales, Charles, Ferdinand and Harry Prampin died. Their successions were opened and judgment dated February 21st, 1946, in connection therewith, was duly registered and plaintiffs herein were recognized as their heirs and sole owners of the property in indivision.
Defendant, Southern Chemical Works, Inc., filed exceptions of "vagueness", "misjoinder of parties defendant", "cumulation of causes of action which are not common to both defendants" and principally that "plaintiffs have no right or cause of action against defendant, Southern Chemical Works, Inc." because it has "parted with its title to the property" the present owner being the Dixie Land Company, Inc. The foregoing exceptions were overruled and no further answer appears in the record on behalf of this defendant.
Thereupon, plaintiffs filed a supplemental and amended petition in which they sought and succeeded in making the Dixie Land Company, Inc. an additional party to their original suit, apparently in order to nullify and set aside the sale of Lots 1 and 2 by Southern Chemical Works, Inc. to Dixie Land Company, Inc.
At this point, the Dixie Land Company, Inc., an assignee or transferee of the Southern Chemical Works, Inc. of Lots 1 and 2, instituted suit against the Prampins and Joseph A. Blythe, endeavoring to quiet and confirm its (City) tax title purchased from Southern Chemical Works, Inc. and "additional tax titles" involving sales to it for unpaid State taxes for the year 1933, assessed in the name of Joseph A. Blythe and encompassing lots "A" or "J", 1 and 2, 27, 28 and 29 of Square 1, Spanish Fort Subdivision, and of other lots in the same and adjacent squares in which the Prampins have no interest. (It appears that in this connection the Prampins' principle interest emanates from the effort of Dixie Land Company, Inc. to quiet its tax titles for the year of 1933 to Lots "A" or "J", 1, 2, 27, 28 and 29, because these lots, more or less, seem to fall within or overlap Lots 1 and 2 of Square 4837 and additional property beyond Lots 1 and 2, according to the Surveys in the record of Guy Seghers of March 23rd, 1948 and of M. T. Ducros.)
The Prampins answered denying the material allegations of the petition and then reconvened and prayed that they be declared the owners of Lots 1 and 2 of Square 4837, and that the tax title (City) which Dixie Land Company, Inc. acquired from Southern Chemical Works, Inc. to Lots 1 and 2, be declared a nullity and that the "patent" (State) acquired by Cortinas to lots 1 and 2, be likewise decreed a nullity. In the final analysis the Prampins prayed that insofar as Dixie Land Company, Inc., claimed ownership, by virtue of its tax titles, to lots "A" or "J", 1, 2, 27, 28 and 29, that the same be ineffective as against the prescriptive rights, "acquirendi causa" of more than thirty years of actual physical possession by the Prampins, of all property contained within their *213 fences, as indicated on the survey of Seghers, dated March 23rd, 1948. More briefly, as to the tax titles which Dixie Land Company, Inc. sought to quiet growing out of their purchase, for unpaid taxes for 1933, due by Blythe, the Prampins pray that these titles be decreed ineffective as against the prescriptive claim of more than thirty years, pleaded by the Prampins, to all the property that was contained "within their fences", or within Lots 1 and 2 of Square 4837.
Some months after the institution of this suit, the Dixie Land Company, Inc., dismissed its suit against the Prampins and Joseph A. Blythe, as of non-suit and without prejudice to the reconventional demand of the Prampins.
The aforementioned two cases were consolidated by the court, a qua, for the purpose of expediency and to facilitate the court in disposing of the related issues.
We shall continue with the factual revelation of Prampin v. Southern Chemical Works, Inc., and discuss the case of Dixie Land Co., Inc. v. Blythe, La.App., 53 So. 2d 217, in a separate opinion.
Hereinabove, we related that in the first of the above named suits, the defendant, Southern Chemical Works, Inc., filed various exceptions which were overruled and then failed or refrained from answering.
Thereafter, defendant Cortinas pleaded the exception of "vagueness" which was overruled, and then answered generally denying the essential allegations of plaintiffs' petition, vigorously insisting that the "State tax sale" was valid and that he was the lawful owner of Lots 1 and 2 in Square 4837, as evidenced by the "patent" emanating from the State of Louisiana. He then reconvened and prayed that a judgment be rendered recognizing him as the owner of the property.
Defendant, Dixie Land Company, Inc., pleaded the exceptions of "no right or cause of action", "cumulation of actions against diverse parties who have no common interest", "multifarious defendants and actions which have no relation to each other", "lis pendens", and "that prior to the purchase by Dixie Land Company, Inc." plaintiffs "ceased to own any of the property in dispute." The foregoing exceptions were either overruled or referred to the merits. Defendant, Dixie Land Company, Inc. then answered denying the pertinent allegations of plaintiffs' petition and maintained that it has a valid title to the property obtained from Southern Chemical Works, Inc., which, in turn, had acquired it by virtue of a tax sale for unpaid City taxes for the year 1932. In the alternative, Dixie Land Company, Inc. prayed that, in the event the Court decreed its title a nullity, it then be reimbursed the sum of the adjudication, together with all taxes, costs, penalties and interest incurred.
The record reflects a stipulation between respective counsel for the Prampins and the Dixie Land Company, Inc. to the effect that "in order to avoid expensive surveys and calculations the judgment may order the payment of an arbitrary sum amounting to one-fourth of the taxes paid on Lot 1, Square 1 of Spanish Fort Subdivision and one-third of the taxes paid on lots 27, 28 and 29, of Square 1 of Spanish Fort Subdivision with interest as provided by law on such sum from date of judicial demand until paid."
Counsel for Dixie Land Company, Inc. concedes that there is, or may be a conflict of interest between the Dixie Land Company, Inc. assignee of the Southern Chemical Works, Inc. and Joseph M. Cortinas, but merely "for the purpose of these suits" he "will argue the respective merits of the several titles and adjust any differences privately."
The Court, a qua, rendered judgment in favor of plaintiffs as prayed for and against the defendants, Dixie Land Company, Inc. and Joseph M. Cortinas. The judgment granted plaintiffs the right to redeem the tax title from Dixie Land Company, Inc., which it had acquired through Southern Chemical Works, Inc. to Lots 1 and 2 in Square 4837, whether said Lots 1 and 2 were entirely within the fences of plaintiffs or some part thereof was not encompassed by the fences.
The judgment also set aside and annulled the title to Lots 1 and 2 in Square 4837 *214 acquired by defendant, Cortinas, by a "patent" from the State of Louisiana, issued in conformity with the provisions of Act 237 of 1924 as amended.
The judgment additionally recognized the stipulation referred to hereinabove between counsel for plaintiffs and counsel for Dixie Land Company, Inc.
Cortinas and Dixie Land Company, Inc. prosecuted an appeal to the Supreme Court, which was of the opinion that its jurisdiction did not embrace "these consolidated cases" and, in conformity with the provisions of Act 19 of 1912, LSA-RS 13:4441, 13:4442, transferred the appeal to this court rather than dismiss it.
The record reveals that both State and City assessments appeared in the name of Albert Prampin, et al., and both State and City tax sales for the year 1932 were consummated in the name of Albert Prampin, et al. It further appears that the only notification relative to the tax sales, was received by Albert Prampin, who resides in a small house on part of the lots, and this was the notice of the 1932 State tax sale. None of the Prampins received notice of the City tax sale. At this time, the record owners of the property were Albert, Achille, Charles, Ferdinand and Harry Prampin, none of whose names, other than Albert Prampin, are inscribed on the assessment rolls.
Defendant Dixie Land Company, Inc. maintains that the court, a qua, erred; that its judgment should be reversed and that there should be judgment decreeing that insofar as the plaintiffs are concerned, the title of the Dixie Land Company, Inc. to lots 1 and 2 is valid.
Defendant Cortinas maintains also that the court, a qua, erred; that its judgment should be reversed and there should be judgment decreeing his title, procured by "patent" to be good and valid.
Counsel for the defendants, as stated heretofore, concede "that it would make no difference what the judgment of this court is if the patent issued to Cortinas is a valid title * * * for the Dixie Land Company, Inc. and Joseph M. Cortinas are able to adjust their differences."
We are of the opinion that the plaintiffs have established, by virtue of the exhibits contained in the record, that in 1932, the year the Southern Chemical Works, Inc. acquired Lots 1 and 2 in Square 4837, by City tax sale, that these lots were assessed in the name of Albert Prampin, et al., when the public records actually revealed that the property was owned by Albert Prampin and his four brothers.
The foregoing tax title is also a nullity in consequence of the City's failure to notify any of the owners thereof in conformity with the provisions of Article 10, Section 11 of the Constitution of 1921, which makes notification a prerequisite to a legal tax sale of the property; and for the further reason that the taxes due the City of New Orleans for 1932 on Lots 1 and 2 of Square 4837 were, in a large part, paid to the City, when the City taxes were paid on Lots "A" or "J", 1, 2, 27, 28 and 29, assessed for that year in the name of Joseph A. Blythe, or his ancestors in title. These lots, more or less, overlap Lots 1 and 2 in Square 4837, or the property contiguous thereto contained "within the fences" of plaintiffs, which is borne out by a plan of Guy Seghers, Surveyor, dated March 23rd, 1948.
Article 10, Section 11 of the Constitution of 1921 provides that the title owner may prove payment of the taxes, on the property sold for taxes. If this fact can be established it is a defense that may be raised by the owner, whether he is in constructive or in actual physical possession.
We, therefore, are of the opinion that the tax title of Southern Chemical Works, Inc., which it subsequently transferred to Dixie Land Company, Inc. and which emanated from a sale by the City of New Orleans of Lots 1 and 2 in Square 4837 for unpaid City taxes for the year 1932 is a nullity.
Defendant Cortinas maintains the validity of his title by "patent" issued to him in conformity with Act 237 of 1924.
As stated heretofore, Lots 1 and 2 in Square 4837 were assessed in the name of Albert Prampin, et al., and this property *215 was sold to the State of Louisiana for unpaid State taxes for the year 1932, and that Cortinas, in compliance with the foregoing act, made application to the Register of the State Land Office, requesting that the two lots be sold at public auction for not less than the assessed value of $200.00 for that year; that ultimately he was the successful bidder and a "patent" was issued to him covering these lots.
We are also of the opinion that this title is a nullity for the reason that the original assessment under which lots 1 and 2 of Square 4837 were sold to the State for 1932 taxes was in the name of Albert Prampin, et al., whereas the public records, at that time, reflected that the property was owned in the name of Albert Prampin and his four brothers (three of whom are now deceased) none of whom, other than Albert Prampin are mentioned in the assessment; and for the further reason that "notification" preceding the tax sale was served on Albert Prampin alone and was, a fortiorari, ineffective as against his brothers, the other four co-owners in indivision.
"* * * a notice to one of several joint owners `et al.' is not a compliance with the law, as to the other joint owners." Adsit v. Park, 144 La. 934, 81 So. 430, 432.
Service of notice of tax sale on the owners of record is what is required. Spears v. Spears, 173 La. 294, 136 So. 614.
Notice to several joint owners under the notification to one of four Et als is insufficient. In LeBlanc v. Babin, 197 La. 825, 2 So.2d 225, 228, the court said:
"The property must be assessed in the name of the record owner. Sec. 10 of Act 170 of 1898 [LSA-RS 47:1964]. In this case, the record owners are J. Burton LeBlanc, Jesse Ernest LeBlanc and William Hardee LeBlanc. It is conceded that the only assessment was in the name of `LeBlanc, Burton, et als.'

* * * * * *
"Under the direct authority of Adsit v. Park, 144 La. 934, 81 So. 430, this notice was illegal, null and void as far as the co-owners, Jesse Ernest LeBlanc and William Hardee LeBlanc are concerned, as their names do not appear in the notice as required by law. As stated in Syllabus 4 of Adsit v. Park, supra, 144 La. at page 935, 81 So. at page 430: `Under Act 170 of 1898, §§ 50, 51, requiring tax collector to address to each delinquent taxpayer a written or printed notice which in country parishes shall be sent by registered mail to residence or place of business of each delinquent tax debtor, the addressing of a notice of delinquency to one of several joint owners "et al.," or to "Park, Wilcox, et al.," is not a compliance with the law as to other joint owners. (Italics ours.)'"
The court then held that in this case three individuals were record owners of an undivided interest in land, manager of store of two of the individuals was not "agent" of the record owners for the purpose of receiving notice of tax delinquency.
The court then said: "The tax sale is a nullity as to the interest in the property of Jesse LeBlanc and W. Hardee LeBlanc, as their names do not appear on the registered tax notice. Richard does not remember to whom the notice was delivered, and J. Burton LeBlanc does not remember receiving the notice. Defendants have failed to prove with legal certainty that the notice was actually delivered to J. Burton LeBlanc. In the absence of such proof, the tax sale must also be annulled as to him."
In Schwing Lumber & Shingle Company, Inc., v. Board of Commissioners for Atchafalaya Basin Levee District, 202 La. 477, 12 So.2d 235, 238, it was held:
"This court has repeatedly held, more particularly under Article 210 of the Constitution of 1879, which was in force at the time the tax sale here involved was made, that the notice required to be given the taxpayer of the tax delinquency preceding the advertisement and sale must be given to the actual owner of the property at the time the notice is given. Pierson v. Castell Land & Harbor Co., 159 La. 158, 105 So. 274.
"In the recent case of Martin v. Serice, 200 La. 556, 8 So.2d 538, 539, it was pointed out that it is now the uniform jurisprudence that `no matter in whose name *216 the property has been assessed, the owner of record at the time of the advertisement and sale for taxes is to be regarded as the delinquent tax debtor within the meaning of the constitutional provision requiring notice to be given to the delinquent before making the sale, and where notice of delinquency was not given to the record owner, the tax sale is void.'" See, also, 16 Tulane Law Review, Pages 585 to 596.
Quere, as to whether such a notification is or may have been effective so as to give the State title to that one-fifth of the property owned by Albert Prampin. However, in our opinion, it is unnecessary to decide this point because the sale for 1932 State taxes to the State of Louisiana is a nullity for the reason that as against a title owner who remains in physical possession of the property (as Albert Prampin did) the peremptive period of five years, provided in Article 10, Section 11 of the Constitution of 1921, does not begin to operate until the title owner has first been dispossessed and the State cannot legally sell property it has acquired by a State tax sale until the full period of five years of peremption has run. While it is true that the property was sold more than five years after the State had acquired it, the title owner was never dispossessed.
Section 59 of Act 170 of 1898, as amended by Act 315 of 1910, LSA-RS 47:2186, provides that it shall be the duty of the Tax Collector for the District in which the property is located, which is sold to the State for unpaid taxes, within thirty days, to take action to reduce the property sold to the State's possession, when the possession thereof at the date of the tax sale is adversely held by the title owner, and provides further, that should said Tax Collector experience any difficulty in reducing this property to the State's possession he may enlist the services of the local District Attorney for the district in which the property is situated.
The section of the act referred to herein above is a distinct recognition that the mere transfer to the State by tax title as against a title owner tax debtor in physical possession, does not transfer the possession to the State. The title owner, quoad the State, is still the title owner in physical possession against whom no peremption runs until he is dispossessed. Therefore, any sale made by the State, no matter how long after the State's title is placed of record in the Conveyance Office, is illegal when attacked; because the sale was made before any of the peremptive period ran and the State is without right to sell property so acquired by it until the peremptive period terminates.
Corporeal possession has been found where the tax debtor merely fences the land. Zahn v. Ferraro, 17 La.App. 167, 134 So. 289.
State cannot transfer clear title until constitutional redemptive period has run. Police Jury of Parish of Jefferson Davis v. Grace, 182 La. 64, 161 So. 22.
Physical possession of the property is a bar to peremptive period. Federico v. Nunez, 173 La. 957, 139 So. 18.
Possession by tenant or co-owner is possession by tax debtor. Succession of Terrell v. Buckner, La.App., 176 So. 666.
The following cases hold that the peremptive or prescriptive period of five years provided by the constitution does not begin to run against a title owner in physical possession until he is dispossessed. Carey v. Cagney, 109 La. 77, 33 So. 89; Ashley Co. v. Bradford, 109 La. 641, 33 So. 634.
The redemptive period starts from the recordation of the tax deed. MacLeod v. Hoover, 159 La. 244, 105 So. 305. This is subject, of course, to the qualification earlier cited that as against an owner in physical possession the peremptive period does not begin to run until he is dispossessed.
It is the settled jurisprudence that the constitutional peremption established for tax sales does not accrue where the owner remains in corporeal possession of the property. Pill v. Morgan, 186 La. 329, 172 So. 409 and cases therein cited.
The title to the State for the year 1932 growing out of the sale of Lots 1 and 2 in Square 4837, assessed in the name of Albert Prampin, et al., was in itself *217 a nullity for the reason that both the City and State taxes, in part, on Lots 1 and 2 were, at the time of that sale, paid by the assessment in the name of Joseph A. Blythe on Lots "A" or "J", 1, 2 and 27, 28 and 29, which lots, in part, overlap Lots 1 and 2.
The express exception contained in Article 10, Section 11 of the Constitution of 1921 as to actual payment of the taxes is applied where there has been a part payment. Board of Commissioners for Fifth Louisiana Levee District v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921.
In Harris v. Deblieux, 115 La. 147, 154, 38 So. 946, 948, it was said:
"The sale made in July, 1900, was made in enforcement in part, at the very least, of a tax which had already been paid, and by reason of that fact escapes from the protection afforded by the prescription of three years provided for in Article 233 of the Constitution of 1898. It is well settled that a tax sale made in enforcement of a tax which is partly due and partly not due is null in its entirety.
"Article 233 of the Constitution does not alter or pretend to alter that rule."
In Board of Commissioners v. Concordia Land & Timber Co., supra [141 La. 247, 74 So. 927], the Court said: "We adhere to the doctrine of the decisions cited above, that a sale for taxes, a part of which have been paid, is null, and is not protected by the prescription of three years provided in article 233 of the Constitution. (1898)"
Assuming arguendo, that the State had received a good title to one-fifth of Lots 1 and 2 in Square 4837 on the notification given Albert Prampin alone, then, in that event, the title of Cortinas continues to be null and void under the State's transfer to him by "patent", because the State did not authorize the Civil Sheriff for the parish of Orleans to sell that one-fifth interest of Albert Prampin, which the State might legally hold under the facts heretofore expressed, but the State ordered the sale of the whole property for the whole assessment of $200.00. Had Albert Prampin offered to pay the one-fifth with penalties that he owed the State, its representative would not have discontinued the sale, for the reason, as stated heretofore, the Sheriff was ordered to sell the whole, whereas one-fifth of the taxes was the only sum that he, Albert Prampin owed.
We are, therefore, of the opinion that the title of Cortinas, acquired by "patent" from the State of Louisiana, is invalid.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.