**86 So.2d 72**

**L. L. ROBINSON**

v.

**Steve MAFRIGE et al.**

No. 41964.

Jan. 16, 1956.

Rehearing Denied Feb. 20, 1956.

———◆———

Morgan, Baker & Skeels, Shreveport, for plaintiff-appellant.

Jackson, Mayer & Kennedy, Shreveport, for defendants-appellees.

HAMITER, Justice.

Plaintiff, L. L. Robinson, is appealing from a judgment which dismissed his suit (instituted pursuant to certain provisions of LSA–R.S. 47:2228) to confirm a tax adjudication to him in 1947 of undivided interests in a tract of land situated in Caddo Parish. The judgment further decreed the sale to be a nullity and ordered plaintiff to execute redemption deeds affecting the property to the defendants upon their paying past due taxes and interest.

The pertinent facts of the cause are not in serious dispute and appear to be those hereinafter set forth.

At a tax sale in 1941 (not that on which this suit is founded), conducted under an assessment to "M. J. Bashara et al.", plaintiff purchased the entirety of such tract (previously he had owned no rights therein). However, in 1945 he executed redemption and quitclaim deeds in favor of some of the tax debtors (the defendants herein) which covered their respective interests, retaining for himself the remaining undivided interest.

In 1946, as a consequence of the transactions mentioned in the preceding paragraph, plaintiff (a resident of Shreveport) and the defendants (all nonresidents of the state) were co-owners of the property which is described as 77.58 acres—N½ of NE¼, 22–21–15, Caddo Parish. And the several undivided interests of the co-owners were listed on the assessment rolls of that parish in the following manner:

"24225 Robinson L. L. 119/320
 Stevens Mafrige 1/8
 Minerva Unice 1/24
 Chas. J. Unice Jr. 1/24
 Robt. C. Unice 1/24
 Brazo Oil Co. 3/8 &
 Union National Bank of
 Houston, Texas 1/320
 146 Herndon Avenue
 Shreveport, La"

Particularly noticeable is that the assessment of all interests was made in connection with and under Robinson's name and only his address was given.

Notice respecting the 1946 taxes due on the entire property was mailed solely to plaintiff and at his Shreveport address. He paid only the taxes that were due on his undivided interest.

On April 10, 1947 the tax collector addressed a registered letter to plaintiff at his Shreveport address informing him that taxes on the undivided interests of his co-owners (the defendants herein, all nonresidents, and who had received no tax

notices) were delinquent and that unless paid within twenty days those interests would be sold. Plaintiff ignored the letter.

In due course the tax collector advertised the interests of the defendant non-residents, the advertisement having been made in accordance with the rules and law respecting resident tax debtors; and on June 23, 1947 he adjudicated them to plaintiff for the unpaid 1946 taxes.

Meanwhile (even as early as 1941), the Magnolia Petroleum Company, under an oil and gas lease held by it and executed by a common ancestor of the litigants, operated on the tract a number of producing oil wells; and that operator paid monthly to plaintiff and to the defendants the oil royalties due under its lease proportionately in accordance with their respective interests, this without any objection on the part of plaintiff. Furthermore, the oil operations and monthly payments continued uninterruptedly for more than five years after the 1947 tax sale and until July 7, 1952, on which date plaintiff (for the first time) notified the lessee that he was the owner of the entire tract, having acquired the interests of the defendants under a tax deed executed in 1947.

Shortly after receiving such notice the lessee suspended payment of all oil royalties and informed the defendants of plaintiff's acquisition at the tax sale. Approximately three months later an attorney representing at least three of the six defendants addressed a letter to plaintiff offering to pay their proportionate shares of the tax indebtedness and requesting a redemption of their interests. Seven days thereafter, specifically on October 20, 1952, this suit to confirm the tax sale was instituted. The defendants, being nonresidents, were cited through a curator ad hoc to appear and answer the petition within ten days from date of service.

Upon the elapse of the mentioned ten days, and the defendants not having filed any pleadings, plaintiff's counsel in open court (without having previously entered a preliminary default) requested that a judgment in accordance with the prayer of the petition be rendered and signed. The request was denied. Thereafter various pleadings were filed, including a "plea of five years peremption and prescription" by plaintiff and also answers and reconventional demands by the defendants.

A trial of the merits of the case resulted in the judgment in defendants' favor above described and from which plaintiff is appealing.

Appellant first complains that the court "erred in not permitting the plaintiff-appellant to read his judgment quieting the tax sale at the First Confirmation Hour following the elapse of ten days from date of citation and service of the petition on the Curator-ad-Hoc."

The instant suit is predicated on the second paragraph of LRS Title 47, Section

2228, reading: "In all cases where tax titles have been quieted by prescription of five years under the provisions of Section 11 of Article X of the Constitution of 1921, the purchaser or his heirs or assigns may, if he or they so desire, * * * obtain a judgment of the court confirming the title by suit in the manner and form as hereinabove set out, except that the delay for answer shall be ten days instead of six months, * * *."

This court has distinguished between actions brought under the two paragraphs of the section. Suits to quiet tax titles under the quoted second paragraph (as in the present case) have been assimilated to ordinary actions, with the regular rules of practice applying. Ashley Co., Limited, v. Bradford, 109 La. 641, 33 So. 634; Boagni v. Pacific Imp. Co., 111 La. 1063, 36 So. 129; Claiborne v. Lezina, 175 La. 635, 144 So. 131 and Le Blanc v. Trahan, 207 La. 171, 20 So.2d 745. Specifically we have held that in such a suit, in the absence of an appearance by the defendant, title can be quieted by judgment only after a default has been regularly taken. Ashley Co., Limited, v. Bradford and Boagni v. Pacific Imp. Co., both supra.

As before shown no preliminary default was entered against these defendants. Consequently, there was no error in the court's refusal to sign a judgment in plaintiff's favor immediately on the elapse of ten days following the service of citations.

The second and most serious complaint of appellant is that the district court "erred in not sustaining the plea of five years peremption and prescription filed by plaintiff-appellant." This plea is based on the above mentioned Section 11, Article 10 (as amended) of the Louisiana Constitution, LSA, the pertinent provisions of which recite: "No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given. * * *"

In opposition to such plea appellees invoke two exceptions to the quoted constitutional provision which are recognized in the jurisprudence of this state, namely: (1) the adjudication to one of several joint owners of property offered at public auction in the enforcement of delinquent taxes does not divest the other co-owners of their interests, because it operates a payment of the taxes for the joint benefit of the co-owners with the right in the adjudicatee to be reimbursed for his outlays; and (2) an invalid tax sale can be set aside after the five-year period where it is shown that the tax debtor (or his heirs) has remained in actual, corporeal possession of the property. Additionally, appellees oppose the plea on

the ground that appellant deliberately attempted to create a situation in which he could take unfair advantage of his co-owners, and that by such conduct he is precluded from relying on prescription.

It is our opinion that at least the stated second ground of opposition to plaintiff's plea of "peremption and prescription" is meritorious. Initially to be noticed is that plaintiff offers slight contention, if any, that these defendants received the proper and required delinquent notices. In oral argument his counsel admitted that they "probably did not"; and the brief presented to this court makes no showing that they did, the plaintiff relying entirely on the curative effect of the five-year peremption or prescription.

Nevertheless, there is no doubt that the defendants were not legally notified of the delinquency. Those furnishing depositions denied having received any notice. And the deputy tax collector, who was called by them as a witness, testified that notice was sent solely to the plaintiff (the only nondelinquent co-owner) and that the receipt therefor was signed by his wife. Apparently no serious attempt was made to locate the non-resident defendants. As is made plain by the prior dealings between the parties, the collector could have ascertained their addresses by inquiry of the plaintiff who had only a short time before executed quitclaim deeds in favor of them. Nor, according to the collector's testimony, was any notice even given them (by publication) as for

"unknown owners" or "non-residents whose post office address is unknown", which is provided for in Section 52 of Act 170 of 1898, as amended, LSA–R.S. 47:2180.

■ The jurisprudence dealing with such sales is to the effect that the collector is under an obligation to make some reasonable effort to locate and notify the non-resident tax debtor. If unsuccessful in his attempt, "As a last resort, he must comply with section 52 in order to satisfy the constitutional requirements of notice to delinquent taxpayers." Salsman v. Bloom, 172 La. 238, 133 So. 760; Messina v. Owens, 207 La. 967, 22 So.2d 286, 289, and cases therein cited. Notice to one co-owner is not sufficient as to the other co-owners. Adsit v. Park, 144 La. 934, 81 So. 430; Le Blanc v. Babin, 197 La. 825, 2 So.2d 225; Prampin v. Southern Chemical Works, Inc., La.App., 53 So.2d 210; and Splane v. Tubre, La.App., 6 So.2d 361.

■ Also, it is well established in the jurisprudence of this state that the prescription or peremption of five years provided for in our constitution, and pleaded herein by plaintiff, does not commence to run so long as the tax debtor is in corporeal possession of the property sold for taxes. Pill v. Morgan, 186 La. 329, 172 So. 409; Westover Realty Co., Inc., v. State, 208 La. 163, 23 So.2d 33; Di Giovanni v. Cortinas, 216 La. 687, 44 So.2d 818; and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500. And it has been held that corporeal possession through

a tenant or "any other person holding for the account of the owner" (tax debtor) is considered possession by the tax debtor. Adsit v. Park, supra (possession in such case was through a third person by virtue of an oil and gas lease under which there was continuous production); Flanagan v. Land Development Co. of Louisiana, 145 La. 843, 83 So. 39; Mire v. La Salle Realty Co. of Louisiana, Limited, 176 La. 663, 146 So. 326; Pill v. Morgan, supra; Succession of Terrell v. Buckner, La.App., 176 So. 666; and Prampen v. Southern Chemical Works, supra.

█ The record in the instant case discloses that the lessee of these defendants (the Magnolia Petroleum Company), during the entire five years following the invalid tax sale and also thereafter, operated some thirteen wells on the tract in question and paid royalties under the lease to the defendants as lessors, all with the knowledge of the plaintiff. The latter received royalties only on his fractional interest, and he did not complain to the lessee as to those paid to defendants until July 7, 1952. At no time during such lengthy period did he seek to have his payments increased. True, shortly prior to the tax sale the plaintiff (in November, 1946) granted a surface lease to the Magnolia Petroleum Company; but it never affected more than his undivided interest.

In addition to the continuous operation of its thirteen wells the lessee has long maintained on the tract general headquarters for production activities in the area. To this end it erected warehouses, a tool house, a garage, a meeting hall, and houses for use as living quarters by some of the employees. Also much equipment has been kept there and employed in the production operations pursuant to the lease contract. These acts, along with the payment of royalties as above shown, constituted sufficient corporeal possession on the part of these defendants (through their lessee) to prevent the running of the five-year prescription or peremption pleaded and relied on by appellant.

Lenard v. Shell Oil Co., Inc., 211 La. 265, 29 So.2d 844, cited by appellant, is not applicable to the instant case. There the court was dealing with the rights and possession of a claimant to a mineral servitude as opposed to those of the owner of the surface of the land. The case did not involve the question of the effect of possession by a lessee (as here) holding from the owner of the fee title (including minerals) and paying oil royalties pursuant to the terms of the lease.

In view of the above conclusion we need not discuss the stated first and third grounds of opposition offered by appellees to the five-year plea of "peremption and prescription".

█ Finally, appellant complains that the district court "erred when it permitted defendant, Brazos Oil Company, to recover, when it was shown that Brazos Oil Company had sold all of its interests to Palmer P. Woods on March 1st, 1951."

The complaint is not well founded. The statute under which this action was instituted permits the tax purchaser to cite "the former proprietor or proprietors of the property." Hence, the Brazos Oil Company (one of the tax debtors) was a proper party defendant; and it, under a reconventional demand, could seek a setting aside of the invalid tax sale. Also, it was not prohibited from conveying under warranty deed whatever interest it had in the property, just as it did in 1951 when selling to Palmer P. Woods. Accordingly, the steps taken herein by the Brazos Oil Company, in reconvening and in defending the title which it had warranted, were appropriate and in keeping with the law.

For the reasons assigned the judgment appealed from is affirmed.