McBRIDE, Judge.
Mr. and Mrs. Manuel A. Murret, Jr., filed this action in redhibition against defendant, from whom they bought a certain intercommunication, radio, fire and burglar alarm system for the price and sum of $763.-98. The equipment was installed in plaintiffs’ home by defendant. Plaintiffs executed and issued to defendant their negotiable promissory note for $1,057.32 in representation of the purchase price, said note being payable in installments of $29.37 per month for 36 months. The note was immediately negotiated by defendant to Nationwide Acceptance Company, which is the holder thereof in due course. The petition alleges that the articles purchased were tainted with redhibitory vices; plaintiffs prayed for a moneyed judgment against defendant for the full amount of the note and for $5,000.00 damages for mental anguish and anxiety, inconvenience and embarrassment resulting from the sale.
Defendant answered generally denying the allegations of the petition; the answer avers that employees of defendant, when dispatched to plaintiffs’ home in response to their complaints regarding the equipment, were refused admission.
After a trial on the merits, plaintiffs recovered judgment for $1,057.32 (the amount of the note), from which appeals have been taken by plaintiffs and the defendant.
LSA-C.C. art. 2520 states that redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders its either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
The pith of the evidence introduced by plaintiffs most convincingly shows that rather than the usual reception, they experienced a constant hum and other varied, assorted and distracting sounds in the radio. The interroom communication system failed, as did the inside-to-outside feature of the system, which was designed to identify a person calling at plaintiffs’ home before he opened the door. And more specifically, the fire and burglar alarm system was utterly defective and went off on various and sundry occasions when there was in fact no fire or any burglar.
In view of this it cannot but be supposed that had the plaintiffs known of *558 the various vices aforesaid, they would not have purchased the equipment.
Defendant contends that the burden of proof was on plaintiffs to show that the vices existed at the time of the sale because the defects did not manifest themselves within three days after the installation of the equipment. Defendant’s own records show that on October 25, 1962, plaintiffs complained of the defective fire and burglar alarm and the constant hum in the radio. The date of the installation was October 22, 1962, which is adequate proof that the vices manifested themselves on the third day after the contract. Therefore, the presumption is the defects existed at the time of purchase. See LSA-C.C. art. 2530. Persistent complaints were made by plaintiffs. Their testimony that the defects existed is supported by that of three disinterested witnesses who appeared on behalf of plaintiffs. Every opportunity was afforded defendant to rectify the defects.
In response to the October 25, 1962 complaint, defendant dispatched a mechanic to plaintiffs’ home and major adjustments were made. Three speaking wires were rerun, the intercommunication system was adjusted at the master unit, and there was a complete replacement of the thermostat in the bathroom.
On December 17, 1962, upon receiving another complaint, defendant’s mechanic Kehoe called at plaintiffs’ residence. His service report to defendant contains this significant notation in his handwriting:
“Unable to turn out hum on high side of AM/band. Low side OK. Also open current in alarm system will have to be corrected by crew that installed system. MK.”
There is no indication that the crew which made the installation ever made any corrections.
Mrs. Murret testified she insisted that Kehoe examine the entire system before he left, and .she says the intercommunication unit was found to be inoperative. Despite the above notation on his service report, Kehoe, from the witness stand, stated that his examination disclosed the equipment to be in good working order.
The record shows that when plaintiffs despaired of defendant ever correcting the equipment, they on several occasions complained to Mr. Thurman who was then connected with Nationwide Acceptance Company, which held plaintiffs’ note. Mr. Thurman appeared as a witness and confirmed such fact. He states he reported the complaints to Mr. Yuspeh, general manager of defendant.
 One of defendant’s contentions is that plaintiffs would not permit their mechanic to make adjustments to the equipment when he called at plaintiffs’ home on January 28, 1963. It is said the mechanic was refused admission. We gather from the record that the workman made the-visit on said date in response to a complaint which had been made some time before. Mrs. Murret admitted she refused to admit the mechanic but gave a very plausible reason for having done so. We think she acted within her rights. At that time plaintiffs had already placed the case in the hands of an attorney. The defendant had been placed in default. On January 21, 1963, prior to the mechanic’s call Mr. Mur-ret had written defendant expressing dissatisfaction with and demanding the removal of the system and defendant’s assumption of whatever obligation remained on plaintiffs’ note held by Nationwide Acceptance Company. Under such circumstances, said notification to defendant amounted to a tender of the equipment. See Westside Appliance Company v. Krause, La.App., 78 So.2d 206.
Defendant maintains that plaintiffs-continued to use the equipment after their demand for rescission of the contract, and they thereby waive their rights to a rescission. It seems that simultaneously with the execution of the sales contract, the *559 parties entered into a separate written agreement labeled “Bonus Demonstration Guarantee,” under which defendant was to pay certain commissions to plaintiffs in consideration of their displaying the equipment to and referring their friends to defendant which hoped to obtain business from such referrals. Plaintiffs admit this, and the record does show they received commissions amounting to $100.00 under the “Bonus Demonstration Guarantee.” But under the plain language of said document, the actions of plaintiffs in displaying the equipment neither had the effect of forfeiting nor interfering with any of their rights under the contract of purchase, for it is plainly stated in Article 6 of the guarantee :
“It is further tmderstood and agreed that this guarantee shall not affect, in any way, the purchase contract which equipment-owning representative has signed for the purchase of the Inter Comm., F.M. & A.M. Radio and fire alarm system.”
Moreover, the purchase contract itself contains this language:
“It is further understood and agreed that payment of compensation set forth in the Representative’s Commission Agreement or in the Bonus Appointment Guarantee shall not in any way affect the obligation of the purchaser as set forth by the terms and conditions of the contract for the purchase of equipment herein referred to.”
Plaintiffs’ attempt to interest others in the equipment does not constitute such “use” as would waive their right to an action of redhibition.
Plaintiffs seem to have done all that could be expected of them before deciding to resort to legal action to protect their interests. Only three repair efforts were made in response to innumerable complaints, and all three failed to afford plaintiffs any relief. Plaintiffs were not obliged to continue on ad infinitum in the hope that defendant would eventually provide a trouble-free system such as they purchased.
The trial court was correct in denying plaintiffs’ prayer for damages. No showing was made that defendant was in bad faith with respect to the sale or knew of the vices and defects in the system. Therefore, no recovery of damages may be allowed. LSA-C.C. art. 2531 reads in part:
“The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, * *
It is provided in LSA-C.C. art. 2545:
“The Seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages.”
See also Hurley v. J. C. Penney Company, La.App., 140 So.2d 445; Boyd v. J. C. Penny Co., La.App., 195 So. 87; Galt v. Herndon, 16 La.App. 239, 133 So. 800; Davies v. Rascon Mfg. & Development Co., 7 Orl.App. 73, and other cases.
LSA-C.C.P. art. 2164 authorizes the appellate court to render any judgment which is just, legal and proper upon the record on appeal. In fairness to the defendant, the judgment appealed from must be recast and affirmed.
It is ordered, adjudged and decreed:
1. That the sale of the equipment to plaintiffs be rescinded and avoided on the ground of redhibition;
2. That the defendant within three days from the finality of this decree deliver to plaintiffs their promissory note for $1,057.32 dated October 13, 1962, given in consideration of the purchase price and also reimburse plaintiffs the aggregate of all installments on the said note paid by them to the present holder thereof;
*560 3. That if defendant does not comply with the requirements of paragraph 2 hereof, then and in that event plaintiffs have judgment against defendant for the full sum of $1,057.32 with interest at the legal rate on the aggregate amount of all installments which have been paid on said note by plaintiffs, said interest to run from the finality of this decree until defendant satisfies this judgment;
4. The defendant is declared entitled to possession of the equipment upon compliance with paragraph 2 hereof or upon satisfying the judgment, and it is ordered to remove the equipment from plaintiffs’ home at its expense within a reasonable time.
As thus recast, the judgment appealed from is affirmed; defendant is cast for all costs in both courts.
Recast and affirmed.