305 So.2d 691 (1974)
Roscoe SLAY, Plaintiff-Appellee,
v.
Don ATER et al., Defendant-Appellant.
No. 4786.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1974.
*692 Norman Magee, Ferriday, for defendant-appellant.
John Sturgeon, Jr., Ferriday, for defendant-appellee.
Polk, Foote, Randolph, Percy & Ledbetter, by William P. Polk, Alexandria, for defendant-appellee.
H. James Lossin, of Reeves & Lossin, Jonesville, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
FRUGE, Judge.
This is a suit in redhibition for the rescission of the sale of a tractor-truck. The plaintiff, Roscoe Slay, contends that the truck has a cracked engine block and other redhibitory defects which make it unfit for its intended use. The suit was filed against Donald E. Ater, d/b/a Don Ater Chevrolet Company, General Motors Acceptance Corporation (GMAC), General Motors Corporation and De Keyzer-Freeman Chevrolet, Inc. After trial the court below rendered judgment in favor of the plaintiff against Don Ater and ordered that the sale be rescinded. The claims against the remaining defendants were dismissed and are not before us. Ater appealed and plaintiff answered requesting that damages and attorney's fees be awarded. Subsequent to filing the appeal the defendant Donald E. Ater died. Mrs. Lavonne Chapman Ater was appointed Administratrix of the succession. Upon motion Mrs. After has been substituted as defendant-appellant pursuant to Rule XIII of the rules of this court. We affirm the judgment of the trial court.
On March 25, 1971, Slay purchased a used 1969 Diamond Rio diesel tractor-truck from Ater Chevrolet in Ferriday, Louisiana, for $11,402. A down payment of $3,026.50 was made and the remaining $8,375.50 was financed through GMAC. The truck was purchased by Slay to be used in connection with his sand and gravel hauling business. It was driven by Johnny Deville, an employee of Slay's.
Slay did not take delivery of the truck until some three weeks after the sale. At this time there was a problem with the power steering. The truck was returned to Ater and the problem was corrected. Thereafter, on the first day the tractortruck was used in connection with Slay's hauling business, the bolts in the rear end shook loose causing all of the grease to be lost from the rear end. Repairs were made that same night by Slay and Deville and the truck was in operation the next day. However, Deville testified that he had to put one or two gallons of water in the radiator that day before hauling and noticed that the radiator water had a milky white appearance.
Deville testified that he continued to have to add water to the radiator and began carrying a five gallon water can with him on his trips. There were also further problems with the rear end. Slay testified *693 that he bought some bearings for the rear end in Monroe and had a hole in the "cage" in the rear end welded. After these repairs the truck operated another week to ten days. Further trouble was then noticed and the tractor-truck was returned to Ater's. The truck was left at Ater's for three weeks and repairs were made to the rear end. Slay paid Ater $748.80 for these repairs. Slay testified that he thought After should hear this expense, but finally signed a promissory note (which he later paid) because Ater refused to return the truck until he did so. Ater testified that it was never his understanding that he was to bear this expense.
After the truck was again put on the job Slay and Deville continued to have a problem with the engine cooling system. Deville testified that because of the problem he was continually adding water and could make only half as many loads as the other drivers. After three or four months Deville finally quit. He testified that he was being paid on a per load basis and could not make a living because of the problems with the truck.
In December Slay informed Ater that he was having trouble with the truck engine. Ater agreed to locate a new motor. However, Ater did not find a motor until after the suit was filed in March of 1972. Slay testified that he asked Ater about the motor on three separate occasions during this period.
When it became apparent that Ater was not able or not willing to locate a motor, Slay bought one himself in Monroe. However, this motor did not fit the truck and has never been installed. While Slay was in Monroe he learned that the tractortruck's engine had been frozen in January 1971 because of a lack of antifreeze. This occurred prior to the sale when Ater still owned the truck.
At the time it froze, the truck was taken to Adair GMC in Monroe where the motor was thawed and repairs made. Mr. Buddy Frost, who worked at Adair's at that time, testified that the water manifold was cracked. It and the hoses were replaced. No test was made to determine whether there had been any damage to the block.
At the close of trial the trial judge found that the tractor-truck contained a redhibitory defect. He entered judgment ordering (1) that the sale be rescinded, (2) that the truck be returned to Ater, and (3) that Ater pay and discharge Slay's promissory note to GMAC.
Appellant specifies three errors to this court. The first is that plaintiff did not tender return of the tractor-truck with a demand that the sale be rescinded.
Under our jurisprudence a tender is required before a sale can be rescinded for redhibition. Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir. 1973); Nationwide Finance Co. of Gentilly, Inc. v. Jones, 279 So.2d 221 (La. App. 4th Cir. 1973), and the cases cited therein. However, a tender is not required where it is not possible or where "the vendor has done some act, or made some declaration which demonstrates that a formal offer to return the thing sold, would have been fruitless." Alan Randal Company v. Quality Oil Company, 100 So.2d 282, 283 (La.App. 1st Cir. 1958).
In the case before us Ater made it clear that a formal tender would have been "fruitless." When Slay informed Ater of the trouble with the motor, Ater's response was that he would procure a new motor. Slay testified that he assumed he would have to pay for this motor since Ater refused to accept responsibility for the rear end. Although Slay asked Ater about the new motor on three separate occasions, Ater did not locate a new one until after suit was filed. During this three-to-four-month period the truck was laid up in Slay's yard with the engine torn down. After receiving no response from Ater (who was at this point in the process of transferring his dealership to De Keyzer-Freeman) Slay filed suit a few days before *694 the end of the one-year prescriptive period.
We are of the opinion that Ater was fully aware of the engine problem, but felt that it was not his responsibility. The fact that he was taking no responsibility was fully communicated to Slay. In these circumstances it was not necessary that Slay formally deliver the truck back to Ater with a demand for rescission. Ater's actions and declarations made it clear that such tender would have been useless.
Appellant next contends that the trial court erred in finding that the motor contained a redhibitory defect at the time of sale as required by Civil Code article 2530. This is a finding of fact and we find no manifest error in the trial court's ruling. The evidence establishes that the motor of the truck in question froze up in January of 1971 while the truck was in the possession of Ater. Although repairs were made to the water manifold which had cracked due to the freeze, no test was made to determine if the block had been cracked. Furthermore, Slay and Deville, the driver, noticed that water had to be put in the truck on the morning after the first day's use and that water had to be continually added thereafter whenever the truck was used. In these, circumstances there was more than adequate evidence for the trial court to conclude that the defect existed at the time of sale.
At oral argument appellant noted that Slay made no mention of any motor trouble when the tractor-truck was returned to Ater's for work on the rear end. Appellant argues that it is reasonable to infer that the trouble with the motor developed after this time and the truck therefore had no defect at the time of sale. We agree that it would be reasonable to expect Slay to complain at that time. However, the testimony of Slay and the driver, Deville, was that the problem with the motor manifested itself almost immediately. The trial judge believed their testimony, and we can find no manifest error in this conclusion.
Appellant's final specification of error is that the trial court should have ordered a reduction in price rather than rescission because the parties could not be returned to the status quo prior to sale. As stated in Port Finance Company v. Campbell, 94 So.2d 891, 894 (La.App. 1st Cir. 1957):
"The courts of Louisiana have held many times that in the case of the rescinding of a sale for defects in the article sold, equity and justice requires that the parties be placed in the same position they were in before the sale as nearly as is possible under the circumstances."
Appellant contends that the evidence shows that the motor is entirely removed from the tractor-truck and that the truck is in a run-down condition and not in approximately the same condition as when sold. The evidence in the record reflects that the motor is removed from the truck, but there is no evidence that the truck is otherwise run-down. The record does not support a finding that the attempts to remedy the defects so altered the tractor-truck's condition that the seller cannot be restored to the status quo by the return of the machine. We conclude that rescission is a proper remedy in this case. See LaFleur v. Boyce Machinery Corporation, 294 So.2d 498 (La.1974).
We now turn to the question of damages. Appellee has answered the appeal contending that the trial court erred in not granting damages and attorney's fees.
Article 2545 of the Civil Code provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."
The evidence establishes that Ater knew the truck engine froze up prior to the sale. The truck was sent to Adair's GMC for *695 repairs. The general manager of Adair's testified that the water manifold, water pump and hoses were replaced. However, no test was made to determine whether the block had suffered any damage. There is no evidence which indicates that anyone from Ater's was told that the block should be tested. There is no evidence which indicates that Ater could not reasonably have believed that the engine was completely repaired by Adair's. Furthermore, there is no evidence that Ater had any problems with the tractor-truck subsequent to these repairs. There is no proof of knowledge of the defect as required by Article 2545 and plaintiff is therefore not entitled to damages and attorney's fees.
In answer appellee contends that he is entitled to reimbursement of the following expenses even if Ater was not in bad faith:

1. Replace rear end .......................... $ 748.80
2. Replace motor ............................. 547.55
3. Replace other defective parts ............. 1,101.71
4. Mechanic's fees to install parts .......... 1,320.00
 _________
 TOTAL ................. $3,718.06

Appellee also contends that he is entitled to attorney's fees and $3,009.30 for rental of a truck while the Diamond Rio was inoperative.
Article 2531, prior to its amendment by act 673 of the 1974 Regular Session of the Louisiana Legislature, provided as follows:
"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses."
Under this article recovery is not allowed for the expense of renting a replacement truck. It is not an expense occasioned by the sale or for the preservation of the thing. Attorney's fees are not allowed for the same reason. Scully v. Campo, 270 So.2d 267 (La.App. 4th Cir. 1972).
The expenses of replacing other defective parts and the mechanic's fees to install those parts are disallowed. The trial judge who heard all the evidence did not find these expenses to be owing and we can find no manifest error in this regard. The cost of replacing the defective motor is also disallowed. Since the sale is being rescinded, plaintiff is not allowed a new motor.
Finally, we note that the trial court did not allow the cost of replacing the rear end. This expense should be allowed if the rear end was defective at the time of sale. The trial court apparently felt that plaintiff had not carried his burden in this regard and we can find no manifest error in the finding. There was some trouble with the rear end immediately after the truck was first used. However, repairs were made by the plaintiff and the rear end operated satisfactorily for a period. There is no clear proof of whether the rear end was defective when the truck was bought or whether the problem developed as a result of faulty repair by the plaintiff or some other event subsequent to the sale.
For the reasons assigned, the judgment of the trial court is amended so that there is judgment against Mrs. Lavonne Chapman Ater in her capacity as administratrix of the succession of Donald E. Ater. In all other respects, that judgment is affirmed. Costs are taxed to the appellant.
Affirmed.