326 So.2d 919 (1976)
PEOPLES FURNITURE AND GIFT, Plaintiff and Appellee,
v.
CARSON HICKS/FRIEDRICHS REFRIGERATION, INC., Defendant and Appellant.
No. 5309.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1976.
Rehearing Denied March 4, 1976.
Writ Granted April 7, 1976.
*920 John G. Williams, Brittain & Williams, Natchitoches, for defendant and appellant.
Edwin Dunahoe, Natchitoches, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX and MILLER, JJ.
CULPEPPER, Judge.
This is a redhibitory action. The plaintiff-purchaser, Peoples Furniture and Gift, Inc., filed suit against the vendor, Carson Hicks, and the manufacturer, Friedrichs Refrigeration, Inc., to rescind the sale of an air conditioning unit, and to recover the purchase price of $4,734.32, together with damages and attorney's fees.
The district court rendered judgment against Friedrichs rescinding the sale and ordering the return of the purchase price, but rejected plaintiff's claim for damages and attorney's fees. Plaintiff's demand against Hicks was also rejected. Friedrichs appealed. Plaintiff answered Friedrichs' appeal, asking that the judgment be modified so as to grant damages and attorney's fees. Plaintiff also filed a separate appeal, seeking judgment against Hicks.
The substantial issues are: (1) Did the defendants misrepresent to plaintiff that the air conditioning unit was of 20 tons capacity? (2) Did defendants waive their right to require that plaintiff tender return of the unit before trial? (3) Is plaintiff entitled to judgment against the manufacturer, Friedrichs, for the return of the purchase price, plus damages and attorney's fees? (4) Is plaintiff entitled to judgment against the dealer, Hicks, and, if *921 so, is Hicks also liable for damages and attorney's fees? (5) Are the defendants entitled to credit for plaintiff's use of the air conditioning unit during 3 summers?
The general facts are that plaintiff was operating a furniture and gift store in a large metal frame building, with glass across the front, located in Natchitoches, Louisiana. Several air conditioning units were installed in the building. Plaintiff decided to replace a 10-ton unit with a larger unit in order to furnish more adequate cooling. They contacted Mr. Carson Hicks, who was in the business of selling, installing and servicing air conditioning equipment in Natchitoches. Mr. Hicks in turn contacted Friedrichs Refrigeration, Inc., who sent their sales representative, Mr. Robert Neale, to Natchitoches to assist Hicks in inspecting the premises to determine their air conditioning needs and in preparing a bid to submit to plaintiff.
In May of 1972, Mr. Hicks and Mr. Neale met with Mr. John Wingo and Mr. Paul Fleming, owners of the plaintiff corporation, and they inspected the building. There is a conflict in the testimony as to the representations made by Neale on that occasion. Mr. Wingo, Mr. Fleming and Mr. Hicks testified that Neale stated a new 20-ton model being manufactured by Friedrichs would adequately cool the building. Neale testified that he did not represent the new model was a 20-ton unit but stated only that it would do a better job than the 10-ton unit which was being replaced. Neale also says he told them they would have to continue using the other units and should also insulate the ceiling and put an awning over the glass front of the building.
Pursuant to these negotiations, Hicks prepared a written offer to plaintiff to furnish and install a "20 ton Friedrich air conditioner" for the price of $4,734.32. Although they had received two other bids, plaintiff accepted the one by Hicks. Friedrichs shipped the unit to Hicks and he installed it in June of 1972.
Mr. Fleming and Mr. Wingo testified the unit never did properly cool the building, although they used the other air conditioning units also. They complained to Hicks that the building was "hot as the devil". In addition, Fleming, Wingo and Hicks testified as to certain defects in the units. The lubricating system for the compressor had to be changed by adding additional oil lines. It was necessary to replace two expansion valves, which change the liquid to vapor in the cooling process. Finally, in June of 1974, the compressor locked and was replaced by Friedrichs. The evidence shows that the Friedrichs service personnel assisted in these maintenance problems.
Mr. Fleming and Mr. Wingo testified that it was not until the compressor was replaced in 1974 that they learned the unit was not of 20 tons capacity, but instead was only 16 tons. They filed this suit on November 25, 1974. Fleming and Wingo testified that this smaller capacity unit never did properly cool the building and that if they had known it was only a 16-ton unit they would not have purchased it.

MISREPRESENTATION AS TO TONNAGE OF UNIT
The first issue is whether the defendants misrepresented to plaintiff that the air conditioning unit was of 20 tons capacity. As stated above, Mr. Fleming, Mr. Wingo and Mr. Hicks testified that on the occasion in May of 1972 when Mr. Neale inspected the building with them, Neale stated that the unit to be furnished was of 20 tons capacity and that it would adequately cool the building. This testimony is strongly corroborated by the fact that the written bid prepared by Hicks describes the unit as a "20 ton Friedrich air conditioner". In his written reasons, the district judge stated that he accepted the testimony of Mr. Fleming and Mr. Wingo on this question. The evidence is clearly sufficient to support this finding of fact that Neale did misrepresent the capacity of the unit.

*922 DEFENDANTS' WAIVER OF TENDER
Friedrichs contends plaintiff cannot maintain this redhibitory action because it did not tender or offer to tender the unit to the seller before filing suit, citing Port Finance Company v. Campbell, 94 So.2d 891 (La.App., 1st Cir. 1957) and other cases to the same effect. This issue was first raised in defendants' district court brief after trial. Jurisprudence has established the rule in redhibitory actions that the seller waives his right to tender where he does not specially plead this objection before trial. Woodward-Wight & Company v. Engel Land & Timber Company, 123 La. 1093, 49 So. 719 (1909); McLain v. Cuccia, 259 So.2d 337 (La.App., 4th Cir. 1972). The rationale of this rule is that the seller should not be permitted to take his chance on a trial of the merits, and, when defeated, urge for the first time the purchaser's failure to tender. Furthermore, a tender is not required where the position taken by the seller demonstrates that a formal offer to return the thing sold would have been vain and useless. Slay v. Ater, 305 So.2d 691 (La.App., 3rd Cir. 1974). See also the general discussion of tender in Robertson, Manufacturers' Liability For Defective Products in Louisiana, 50 Tul.L.Rev. 50, at pg. 96.
Applying these rules to the present case, we find that after plaintiff filed this redhibitory action defendant did not specially plead the lack of tender as an objection to the suit. Instead, defendant answered denying any defect in the unit and praying that plaintiff's suit be dismissed. Under these circumstances, it would have been a vain and useless thing for plaintiff to have tendered the unit before trial, since defendant would have refused to accept it. We therefore hold defendants waived their right to tender. However, we shall protect defendants' right to return of the unit by amending the trial court judgment so as to require this as a condition precedent to the execution of the judgment for the return of the purchase price plus damages and attorney's fees.

RECOVERY AGAINST FRIEDRICHS, THE MANUFACTURER
In Media Production Consultants, Inc. v. Mercedes-Benz of North America Inc., 262 La. 80, 262 So.2d 377 (1972), our Supreme Court established the rule that both the manufacturer and the dealer may be held liable in solido to the purchaser in a redhibitory action. See also Rey v. Cuccia, La., 298 So.2d 840 (1974) in which our Supreme Court followed Media. For a general discussion see Robertson, Manufacturers Liability For Defective Products in Louisiana, 50 Tul.L.Rev. 50, at pg. 78, et seq.

LSA-C.C. Article 2547 provides:
"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
"It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer."
Under the facts stated above, the manufacturer, Friedrichs, made a declaration to plaintiff that the unit possessed a quality which Friedrichs, as manufacturer, is presumed to have known it did not possess. Under the circumstances, this misrepresentation gives rise to an action in redhibition. LSA-C.C. Article 2520 provides that the seller may rescind the sale "on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed the buyer would not have purchased it, had he known of the vice." Plaintiff's owners testified that the 16-ton unit was useless to them because it would not cool the premises, and that they *923 would not have purchased it had they known it was not a 20-ton unit.
We conclude that Friedrichs is liable for the return of the purchase price plus damages and attorney's fees. The purchase price was $4,734.32. Plaintiff borrowed this amount from a local bank. The record shows the credit life insurance, recording fee and finance charges for this loan totaled $1851.28. Plaintiff is entitled to this amount as damages. In addition, we think the circumstances of this case justify an attorney's fee in the sum of $1500. The judgment appealed must be amended so as to award these damages and attorney's fees in addition to the return of the purchase price.

RECOVERY AGAINST HICKS, THE DEALER
The next issue concerns the liability of Hicks, who actually sold the unit to the plaintiff. LSA-C.C. Article 2529 provides: "A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to redhibition, if this quality was the principal motive for making the purchase." In the present case, Hicks was in good faith in declaring to the plaintiff at the time he sold and installed the unit that it had a capacity of 20 tons. Hicks testified he did not learn until 3 or 4 months after the sale, when he finally received the rating of the unit from Friedrichs, that it was only a 16-ton unit. Nevertheless, under the clear provisions of Article 2529, Hicks is liable for the return of the purchase price. See the very similar case of Atlantic Gulf Supply Corporation v. McDonald, 175 So.2d 6 (4th Cir. 1965) where a 7½-ton air conditioner was sold on the good faith representation that it was a 10-ton unit.
Since Hicks was in good faith, he is not liable for damages or attorney's fees under LSA-C.C. Article 2547. The judgment appealed must be amended so as to award plaintiff judgment against Hicks in solido with Friedrichs for the return of the purchase price.

CREDIT FOR PLAINTIFF'S USE OF UNIT
The final issue is whether the defendants are entitled to a credit for plaintiff's use of the unit. Plaintiff used the unit each summer from the time of its installation in June of 1972 through 1974. However, as stated above, Mr. Fleming and Mr. Wingo testified it never did adequately cool the building.
In the case of Breaux v. Winnebago Industries, Inc., 283 So.2d 763 (1st Cir. 1973) the court pointed out, with citation of authorities, that there is no established rule for determining the amount of credit in these situations. In the present case, we have little evidence on which to base an assessment of the amount of credit to be allowed. We know that the price of the unit plus installation was $4,374, and Mr. Neale testified the compressor has a guarantee of 5 years and the unit should perform satisfactorily for about 10 years. Plaintiff used the unit during 3 summers, and, although it did not adequately cool the building, plaintiff undoubtedly received some benefit from it. Plaintiff still has the unit and it is in good operating condition. We will, by amendment of the trial court judgment, order plaintiff to return it to defendants. In an attempt to make an equitable decision under the circumstances, we will allow defendants a credit of $600 against the purchase price for plaintiff's use of the unit for 3 summers.

THE DECREE
For the reasons assigned, the judgment appealed is amended so as to increase the award against Friedrichs Refrigeration, Inc. from the sum of $4,734.32 to the sum of $8,085.60, less a credit of $600. The judgment is further amended so as to cast Carson Hicks in solido with Friedrichs for *924 the return of the purchase price in the sum of $4,734.32, less a credit of $600, together with legal interest from date of judicial demand until paid. Furthermore, as a condition precedent to the execution of this judgment against defendants, plaintiff is ordered to return the air conditioning unit to the defendants. Otherwise, the judgment appealed is affirmed. All costs in the district court, as well as the costs of this appeal, are assessed against the defendants in solido.

Affirmed, as amended.
MILLER, J., dissents and assigns written reasons.

MILLER, Judge (dissenting).
I respectfully submit the circumstances of this case allow only a "reduction of price" and damages, including reasonable attorneys' fees under LSA-C.C. article 2547. People's Furniture received good service from this unit for more than two years. When they filed this suit they were selling their business. Under "the circumstances of this case" a reduction of price is indicated.
Although I have serious reservations, I can agree there is no manifest error in the trial court's determination that Friedrichs' sales representative (Neale) misrepresented the 20 horsepower unit to be a 20 ton unit. Nevertheless the Friedrichs unit was never intended by itself to cool the premises. As noted in the majority opinion, additional insulation and awnings were required. Furthermore, the new unit was to be operated in conjunction with all other units already installed. Fleming and Hicks so testified in the first 40 pages of the transcript:(Emphasis added.)

Fleming:
Q. Tell me what went on when you all inspected the premises, what were you told?
A. Mr. Neale and Mr. Hicks and I walked to the front of the store. They talked about how they could bounce the air off the front window, and with a twenty ton unit, with our present units, would adequately cool the building.
Q. Do you recall him stating to you that there was no way that the unit he was selling you would adequately cool your building, that you had to do other things to cool your building?
A. I had to run my other air conditioners with it.

Hicks:
Q. Mr. Hicks, what did, to the best of your knowledge, what did Mr. Neale tell you would be required to cool the building over there, People's Furniture?
A. With the air conditioners that they have in there, they say that it was 42 tons, I believe was what . . . if all of them was running.

Q. Were you ever informed by Mr. Neale that this unit in itself would take care of the cooling needs of People's Furniture?
A. Not exactly take care of all of it, no sir.

Q. Were you informed differently?
A. The information we gave over there was to
Q. I want to know what you were informed. Were you informed by Mr. Neale that this machine, this unit that you were buying, would not take care of the cooling?
A. Not by itself, no.

* * * * * *
Q. My question is, were you informed that the unit that was being sold, in *925 conjunction with the ones they already had in the building, would provide all the air condition which they required?
A. They didn't say all of it.

Q. It would provide an adequate amount?
A. Provide an adequate amount with the other four units they had in there running.

Although this testimony establishes beyond doubt that Friedrichs' unit was to be operated in conjunction with four other units, People's Furniture never so operated it. Hicks disconnected one roof-top unit and used that wiring to connect the Friedrichs unit (Tr. 43) and testified that another roof-top unit was not working (Tr.20-1).
I cannot agree that Hicks was in good faith in relying on representations by Friedrichs' salesman. Hicks testified he knew the unit being sold to People's Furniture was a new model, just off the line. He knew the unit had not been rated. He had eight years of sales experience in air conditioning and could not make a firm representation of tonnage until the unit was rated.
Hicks agreed with Neale that the unit was never expected to furnish adequate cooling for the building unless the other units were operating. When the unit was rated three or four months after it was installed at People's Furniture, Hicks received literature notifying him the 20 horsepower unit was rated to deliver 16 tons of air conditioning. But Hicks did not relay that information to People's Furniture. They learned of the discrepancy not from Hicks who has been held to be in good faith, but from Friedrichs' employees who have been held to have misrepresented the unit. People's Furniture learned of the tonnage shortage a year and a half after Hicks received the rating information. Hicks knew complaints of inadequate performance had been made in the interim.
Hicks' knowledge the unit was unrated at the time he submitted his bid stating he would furnish a 20 ton unit, and his subsequent behavior establish he did not rely on Friedrichs, whatever the basis for his action may have been.
On this basis Hicks should be held solidarily liable with Friedrichs.
The issue of Friedrichs' waiver of tender is irrelevant to the award of a reduction of price.
I would grant People's Furniture a 30% reduction in price. The tonnage supplied was 20% short of the purchaser's understanding of what it was purchasing. The additional 10% is assessed as costs related to installation of additional airconditioning to make up the shortage.
LSA-C.C. art. 2547 specifically authorizes damages and attorney fees where there is a reduction in price. A 30% reduction in price gives rise to an award of 30% of the finance charges as damages. With the success of its claim, People's Furniture is entitled to a reasonable attorney's fee which I agree is properly fixed at $1,500.
I respectfully submit the trial court award should be reduced as a reduction in price in the amount of $1,420.30, together with an award of 30% of People's Furniture's $1,851.28 in finance charges$555.38, and $1,500 as attorney's fees. In my opinion, People's Furniture is entitled to a judgment of $3,475.68.

I respectfully dissent.