**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-30971

LINDY INVESTMENTS, LP, Etc; ET AL;

Plaintiffs

LINDY INVESTMENTS III, a Louisiana Limited Partnership; MAGNOLIA
CREEK APARTMENTS, a Louisiana Partnership;
Plaintiffs-Appellants-Cross-Appellees

MAGNOLIA CREEK, Louisiana Limited Corp.
Appellant-Cross-Appellee

VERSUS

SHAKERTOWN CORPORATION; ET AL;

Defendants

SHAKERTOWN 1992 INC; COMMERCE AND INDUSTRY INSURANCE CO. OF
CANADA
Defendants-Appellees-Cross-Appellants

Appeals from the United States District Court
For the Eastern District of Louisiana

May 2, 2000

Before KING, Chief Judge, DUHÉ and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

In this redhibition case arising under Louisiana law, Lindy
Investments III, Magnolia Creek Apartments, and Magnolia Creek
(collectively "Appellants") challenge the district court's order
predicating the execution of the Appellants' judgment upon return

of defective siding to the manufacturer, Shakertown 1992, Inc. ("Shakertown"). Additionally, Appellants contest the district court's refusal to award "litigation-related expenses" to Appellants.[1] At the same time, the Appellants and Shakertown challenge the district court's conclusions on summary judgment regarding the scope of the commercial general liability policy (the "Policy") issued to Shakertown by Commerce and Industry Insurance Company of Canada ("C&I"). C&I cross-appealed contesting the award for diminution in value. For the reasons stated herein, we AFFIRM the trial court's decision except as to the issue of litigation-related expenses which we DISMISS for lack of appellate jurisdiction.

BACKGROUND

Appellants own and operate two apartment complexes in River Ridge, Louisiana. Appellants purchased from Shakertown and installed "Cascade Classic" exterior siding on both complexes. Cascade Classic is a cedar shingle and plywood exterior siding that Shakertown manufactured between 1992 and early 1995.

After noticing that the siding had begun to "peel" and "delaminate," the Appellants sued Shakertown and C&I in Louisiana state court, alleging that the siding contained redhibitory defects

---

[1]Appellants' argument that they are entitled to prejudgment interest on their award is not properly before this court as the issue was not included in the pre-trial order. See Elvis Presley Enter., Inc. v. Capece, 141 F.3d 188, 206 (5th Cir. 1998) ("[I]f a claim or issue is omitted from the [pre-trial] order, it is waived, even if it appeared in the complaint.")

under Louisiana law.[2]  Defendants removed the suit to federal court.  Following a trial on the merits[3], the jury found for the Appellants and awarded them a total of $298,029 for "Rescission of sale/Reduction in purchase price," $9,059 for "Diminution of value" of the buildings and $177,418 in "Reasonable Expenses."  The jury also found that the Appellants received a total of $14,901 of value from their use of the defective shingles.

The trial court entered judgment in the amount awarded by the jury discounted by the $14,901 credit for use of the product and subject to judicial interest running from the date of judgment. The court conditioned  execution of this judgment upon Appellants' return of the siding to Shakertown.

Pursuant to the parties' agreement in the pre-trial order, the court took up the issue of attorney's fees and litigation-related costs after entering judgment on the merits.  The court granted Appellants' motion for attorney's fees and  denied under Federal Rule of Civil Procedure 54(d) Appellants' request for litigation-related expenses.  The court postponed determination of the amount of fees and costs pending the outcome of this appeal.

Appellants appealed challenging the trial court's decisions

---

[2]LA. CIV. CODE art. 2520 et seq. (1870)  Appellants sued C&I under the auspices of Louisiana's direct action statute, LA. REV. STAT. § 22:655 (1989)

[3]By agreement of the parties in the pre-trial order, the court severed the issue of "recovery of attorney's fees and litigation-related costs" and had the parties "try the issue to the court pending the outcome of the jury trial."

regarding return of the siding, the denial of litigation-related expenses, and the scope of C&I's coverage. Shakertown cross-appealed challenging the summary judgment ruling limiting the scope of C&I's coverage. C&I cross-appealed challenging the sufficiency of Appellants' evidence supporting the award for diminution in value of the apartment complexes.[4]

## JURISDICTION

Although no party contests our jurisdiction to decide this matter, we must on our own motion consider it. See Thornton v. General Motors Corp., 136 F.3d 450, 453 (5th Cir. 1998). Except in rare circumstances not applicable here, our jurisdiction is limited to final decisions of the district court. See 28 U.S.C. § 1291.

By separating the trial on the merits from the award of attorney's fees and costs, the trial court has created a two-track system for appeals purposes. The trial court's decisions on the merits are appealable final orders. See Budinich v. Becton Dickson and Co., 486 U.S. 196, 202-3 (1988) ("[A] decision on the merits is a 'final decision' for the purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case."). However, because the trial court has not yet determined the amount of attorney's fees and costs due to Appellants, we do not have appellate jurisdiction to entertain

---

[4]Upon careful review of the record we find Appellants' expert testimony regarding diminution in value sufficient to support the jury's award.

4

Appellants' challenge to the denial of recovery for litigation-related expenses.  See Deloach v. Delchamps, Inc., 897 F.2d 815, 826 (5th Cir. 1990) ("Because a judgment is not final until both liability and damages are determined, a judgment awarding an unspecified amount of attorney's fees is interlocutory in nature.").  Accordingly, we must dismiss for lack of appellate jurisdiction Appellants' challenge to the trial court's refusal to tax litigation-related expenses as costs under Rule 54(d).

REDHIBITION

I.  The Louisiana Law of Redhibition

Redhibition is the avoidance of a sale of a defective product when the defect has rendered the product useless, or its use so inconvenient and imperfect, that the buyer would not have purchased it had he known of the defect.  See LA. CIV. CODE art. 2520 (1870). In general, the law requires the purchaser to "tender" the defective product to the seller before filing any action in redhibition.  See Blue v. Schoen, 556 So.2d 1364, 1370 (La. App. 5th Cir. 1990); Vance v. Emerson, 420 So.2d 1032, 1035 (La. App. 5th Cir. 1982).  Under the "tender requirement," the buyer need not physically return the product prior to suit; rather, he may satisfy the requirement simply by offering to return the product for repair and/or replacement.  See Mitchell v. Popiwchak, 677 So.2d 1050, 1054 (La. App. 4th Cir. 1996).

Typically, the remedy contemplated in a redhibitory action is full rescission of the sale.  Rescission requires the seller to

5

return the purchase price and the buyer to return the thing purchased, thus placing the parties in the positions they held before the sale. See Capitol City Leasing Corp. v. Hill, 404 So.2d 935, 939 (La. 1981). This "return requirement," though involving the eventual tender of the defective product to the seller, is the end result of a successful rescission and should not be confused with the procedural pre-filing tender requirement mentioned above. See Vance, 420 So.2d at 1035.

Louisiana courts typically invoke rescissionary remedies in redhibition cases where the product is totally unfit for its intended use. When a redhibitory defect merely diminishes the product's value or utility, however, a party can recover *quanti minoris* damages for a reduction in the purchase price without having to return the defective product. See Blue, 556 So.2d at 1369. The trial court has discretion to award either rescission or *quanti minoris* in a successful redhibitory action, see LA. CIV. CODE art. 2543 (1870); but cannot award both. See Grimes v. Alenco Window Co., 638 So. 2d 1147, 1149 (La. App. 1st Cir. 1994) ("[the buyer] is not entitled to recover for both the return of the purchase price and for replacement of the defective item."). We must therefore determine which one of these two remedies is appropriate.

The trial record clearly indicates that Appellants sought a full rescission. The district court's pre-trial order indicates that "plaintiffs contend they are entitled to a rescission in the

6

sale."  Although the pre-trial order mentions the possibility that the shingles may be "mechanically fastened" to the plywood in order to prevent delamination, the parties downplayed this option as unworkable.  Moreover, in a handwritten amendment to the section of the pre-trial stipulation marked "LISTING OF CONTESTED ISSUES OF LAW" the parties struck a question asking, "If a redhibitory defect exists, whether plaintiffs are entitled to a rescission of the sale, or merely a reduction of the sales price."  Judging from the single remaining reference to rescission and the striking of the on-point question of law, we conclude that as of the beginning of trial, Appellants sought rescission.[5]

Turning to the jury's award, we note that the amounts awarded for "rescission of sale/reduction in purchase price" equal the stipulated purchase prices for the panels installed at both complexes.  We agree with the trial court that the jury's awarding of the exact purchase price constitutes a proper rescission of sale.  That Appellants might now be required to live up to their end of the rescissionary bargain and return the shingles should come as no surprise to them.[6]

---

[5]Although the parties' did not strike their reference to the plaintiffs' entitlement to rescission vis a vis reduction in the "LISTING OF CONTESTED ISSUES OF FACT," we are confident that because this is not an issue of fact and the parties specifically deleted its appropriate listing as an issue of law their agreement to try this as a rescission case is manifest.

[6]Appellants' argument that Appellees' failure to mention the return requirement until after the jury came to its decision constitutes unfair surprise and a waiver of the requirement is

7

II.  Return of the Siding

Appellants argue that the district court erred in ordering them to return the siding to Appellees as a condition precedent to the execution of the judgment.  Appellants contend that the district court should not have applied Louisiana Civil Code Article 2532 to require return because this provision was not in effect when Appellants' cause of action arose.  In the alternative, Appellants note that Article 2532 does not require the purchaser to return the defective product "until all his claims, or judgments, arising from the defect are satisfied."  LA. CIV. CODE art. 2532 (1995).  Finally, Appellants insist that they should be excused from the return requirement under common law principles of equity.

A.  Applicability of Article 2532

Article 2532 of the Louisiana Civil Code reads in relevant part:

> A buyer who obtains rescission because of a redhibitory defect is bound to return the thing to the seller, for which purpose he must take care of the thing as a prudent administrator, but is not bound to deliver it back until all his claims, or judgments, arising from the defect are satisfied.

LA. CIV. CODE art. 2532 (1995).  Article 2532 is a product of the

---

wholly without merit.  Appellants' brief repeatedly confuses the pre-filing tender requirement with the post-judgment return requirement.  Although under Louisiana law failure of tender is an affirmative defense that must be raised by a dilatory exception of prematurity, see Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620, 622 (La. App. 1st Cir. 1977), the return requirement is the generally required result of rescission and thus does not need to be separately pled.

8

1993 amendments to the Louisiana Civil Code and its effective date was January, 1995. Because the sale giving rise to this action occurred before the effective date of Article 2532, Article 2532 itself is inapplicable. See Insurance Storage Pool, Inc. v. Parish Nat'l Bank, 732 So.2d 815, 819 n.1 (La. App. 1st Cir. 1999); Jackson v. Slidell Nissan, 693 So.2d 1257, 1262 n.5 (La. App. 1st Cir. 1997). Accordingly, the district court erred in referencing Article 2532 as a basis for its decision. Nevertheless, the district court did not rely solely upon this Article. Rather, the court also noted that its decision was supported by "earlier case law" and in fact relied upon pre-revision case law in coming to its conclusion. Moreover, the Civil Code articles upon which the drafters based Article 2532, namely Articles 2018 and 2033 of the Code of 1870, see 1993 La. Acts 841 § 1, were in effect at the time that Appellants' claims arose. Thus, the district court applied the correct law concerning return of the shingles.

B. Satisfaction of Claims as Condition Precedent to Return

Appellants' reliance upon Article 2532's provision that the purchaser need not return the defective product "until all his claims, or judgments, arising from the defect are satisfied," LA. CIV. CODE art. 2532 (1995), is misplaced. Because Article 2532 was not in effect at the time of the transaction, it cannot guide our decision in this case. See Insurance Storage Pool, 732 So.2d at 819 n.1; Jackson, 693 So.2d at 1262 n.5. Instead, we must look to pre-amendment law to determine the validity of this condition.

9

Before the enactment of Article 2532, Louisiana courts required "return of the thing" either as a condition precedent to the execution of the judgment or as a condition subsequent to it. Compare Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112, 117 (La. 1973) ("[T]here will be judgment in favor of plaintiff, . . . in the amount of $4959.37, . . . conditioned upon the return of [plaintiff's] 1970 Pontiac Lemans."); Peoples Furniture & Gift v. Carson Hicks/Friedricks Refrigeration, Inc., 326 So.2d 919, 924 (La. App. 3rd Cir. 1976) ("[A]s a condition precedent to the execution of this judgment against defendants, plaintiff is ordered to return the air conditioning unit to the defendants.") with Associates Fin. Serv. Co., Inc., 382 So.2d 215, 222 (La. App. 3rd Cir. 1980) ("[Defendant must] pay and discharge remaining obligation [on a truck] . . . contingent that upon payment of said sum, [financing company] deliver the subject truck to [defendant]."); Murret v. Mark II Elec. of La., Inc., 169 So.2d 556, 559-60 (La. App. 4th Cir. 1964). ("[D]efendant . . . [must] deliver to plaintiffs their promissory note . . . . [D]efendant is declared entitled to possession of the equipment upon [delivery of the note]."). As pre-amendment law recognized both approaches as acceptable, the district court did not err in requiring return of the shingles as a condition precedent to the execution of the Appellants' judgment.

C. Equitable Avoidance of the Return Requirement

Appellants insist that the district court erred in not

excusing the return requirement. They note that Louisiana law does not require the purchaser to return a defective product when the product has been "consumed by use." See Walton v. Katz & Besthoff, 77 So.2d 563, 566 (La. App. Orl. 1955) (holding that plaintiff could sue for rescission of sale of defective paint despite his inability to return the paint and restore the status quo ante because paint was consumed by use). Appellants rely primarily upon our decision in PPG Indus., Inc. v. Industrial Laminates Corp., 664 F.2d 1332 (5th Cir. 1982), and the Louisiana Fourth Circuit's decision in Frank Brigtsen, Inc. v. Swegel, 258 So.2d 579 (La. App. 4th Cir. 1972) to support their consumed by use claim. We find neither of these cases dispositive.

In PPG we did not address whether the products at issue, spandrel wall panels, were consumed by use and therefore unreturnable. We simply recognized that for statute of limitations purposes a case may sound in redhibition even if the defective product cannot be returned to the seller. See PPG, 664 F.2d at 1335. We did not determine that the spandrel panels were or were not returnable. See id. As a result, PPG cannot support Appellants' claim that the shingles were consumed by use.

Appellants' interpretation of Brigtsen conflates the tender requirement with the return requirement. In Brigtsen a homeowner purchased 20,000 "Spanish moss simulated old" bricks. The homeowner had installed 6,500 of these bricks. It rained that night, washing off the bricks' coating. The homeowner complained

11

to the seller and asked that the seller inspect the installed bricks. After inspection, the seller hauled away the remaining 13,500 bricks and sued the homeowner on the open account for the 6,500 installed bricks and drayage costs.[7] The homeowner sued in reconvention claiming that the coating on the bricks was defective. The trial court and the court of appeal agreed with the homeowner and assessed drayage costs to the seller. See Brigtsen, 258 So.2d at 579-581.

On application for rehearing, the court of appeal appended to its decision a per curiam denial of rehearing addressing the tender requirement. The court waived the pre-filing tender requirement noting that:

> To require the [homeowner] to incur the additional cost of removing the installed bricks from the garage in addition to drayage costs, in order to tender them to plaintiff, would, in our opinion, be an exercise in futility and onerous, therefore unreasonable in these circumstances.

Id. at 581. As the court's original opinion assessed drayage fees to the seller, this reference to the homeowner's bearing drayage costs makes sense only in reference to a hypothetical pre-filing tender. Moreover, the case upon which the court relied in reaching this conclusion, Zibilich v. Metry Upholstery, Inc., 148 So.2d 436 (La. App. 4th Cir. 1963), examined the pre-filing tender requirement. Finally, the Brigtsen court's conclusion that "[t]he

---

[7]Drayage costs are the costs of hauling away the unused bricks.

law does not require one to do a vain and useless thing," Brigtsen, 258 So.2d at 581-82 citing Harkness v. Leggett, 131 So. 190 (La. 1930); Perkins v. Chatry, 58 So.2d 349, 352 (La. App. Orl. 1952), stems from a long line of Louisiana cases involving waiver of allegedly futile pre-filing requirements, see Louisiana Highway Comm'n v. Bullis, 200 So. 805 (La. 1941) (waiving need for tender of true value of land before eminent domain proceeding); MacLeod v. Hoover, 105 So. 305 (La. 1925) (waiving need for tender prior to finalization of tax sale); Southern Sawmill Co. v. Ducote, 46 So. 20 (La. 1908) (waiving default requirement when obligor fails to manufacture and deliver goods within a fixed time); Dwyer v. Tulane Educ. Fund's Adm'rs., 17 So. 796 (La. 1895) (waiving default requirement when contractor cannot complete building on time); and, thus, is not an exception to the return requirement.

Louisiana's "consumed by use" case law holds plaintiffs to a very high standard: a product is consumed by use only if it "obviously cannot be returned."  Walton, 77 So.2d at 566 (used paint); see also, Rapides Grocery Co., Inc. v. Clopton, 131 So. 734 (La. 1930) (planted seeds); Greenburg v. Fourroux, 300 So.2d 641 (La. App. 3rd Cir. 1974) (dead puppy), Molbert Bros. Poultry & Egg Co. v. Montgomery, 261 So.2d 311 (La. App. 3rd Cir. 1972) (dead chickens).  The mere fact that a product may be useless once returned does not warrant waiver of the return requirement.  See Vance, 420 So.2d at 1035 (holding that defective custom carpet must be returned to seller despite the fact that the returned carpet

13

would be useless to the seller).

We have not discovered any evidence in the record suggesting that it would be impossible to remove the siding from the apartment buildings. In fact, testimony indicates that the siding can be removed. Although it will certainly be costly to remove it and it will be of little value once removed, Louisiana law mandates that the parties be put back in the positions they held before the sale. To this end, the court properly ordered the Appellees to return the purchase price minus an appropriate discount for the value Appellants' received from use of the shingles[8] and to pay an additional $177,000 for the "reasonable expenses" Appellants will incur in removing the siding. In exchange, Appellants must return the siding as a condition precedent to the judgment.

INSURANCE COVERAGE

The trial court ruled on summary judgment that the C&I Policy covers only the jury awards for diminution in value, costs, and reasonable attorney's fees.[9] The trial court based its decision on

---

[8]Appellants insistence that the award of a "discount for use" changes the jury's award from rescission into *quanti minoris* is simply incorrect. See Alexander v. Burroughs Corp., 359 So.2d 607, 610-11 (La. 1978) (holding that a credit for purchaser's use of a product may be appropriate in rescission even in favor of a bad faith seller or manufacturer); Peoples Furniture, 326 So.2d at 924 (awarding $600 credit for use of defective air-conditioning unit in rescission case).

[9]We review a grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the party opposing the motion. See Hall v. Gillman, Inc., 81 F.3d 35, 36-37 (5th Cir. 1996). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact

14

the Policy's "work product exclusion" which provides that the Policy does not apply to "property damage to [Shakertown's] products arising out of such products or any part of such products." Both the Appellants and Shakertown challenge this ruling and insist that the Policy covers the awards for the purchase price and reasonable expenses as well as the above mentioned awards. Their argument is three-fold. First, they argue that the work product exclusion is irreconcilable with the Policy's "warranty exception" which excludes coverage for Shakertown's liability "under any contract or agreement" except for "a warranty of fitness or quality of products or work which is implied by statute." Second, they contend that even if the policy is unambiguous, the work product exclusion is inapplicable because the Appellants incorporated the shingles into their buildings making them no longer Shakertown's product. Finally, they allege that under Louisiana law when a defective product is incorporated into a larger work, work product exclusions do not apply to the costs associated with repair and replacement of the defective product and that, accordingly, the Policy covers the award of "reasonable expenses."

I. Ambiguity

We agree with the trial court and find no conflict between the

---

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

15

work product exception and the warranty exception. Under Louisiana law, work product exclusions provide no coverage to the insured for damage to his own product or for repair and/or replacement of his defective product. See Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082, 1085 (La. App. 3d Cir. 1983). As we have previously held, work product exclusions act simply to limit coverage to damage to the products of parties other than the insured. See Gulf Miss. Marine Corp. v. George Engine Co., Inc., 697 F.2d 668, 670 (5th Cir. 1983). In this case, such a limited policy exclusion does not wholly thwart the working of the warranty exception, as redhibition contemplates monetary liability beyond damages to the defective product itself. See LA. CIV. CODE art. 2545 (1968). As such, we see no ambiguity in the Policy and no error in the trial court's resolution of this issue.

II. Incorporation of the Siding into the Structure

Appellants and Shakertown cite no Louisiana law suggesting that incorporation of an insured's product into a larger structure makes the product no longer the "insured's product." Moreover, we have not found any Louisiana authority suggesting that Civil Code Articles 465 and 493.1 regarding the attachment of products to immovables somehow work such a transformation.

The closest that any court interpreting Louisiana law has come to addressing Appellants' and Shakertown's argument is our decision in Gulf Mississippi where we held that "where the work of the insured involves assembling, repairing, or installing parts owned

16

by another entity, the completed whole is not regarded as the insured's product within the meaning of [a similar] exclusion clause." Gulf Miss., 697 F.2d at 673. Inasmuch as "a subcontractor who installs components owned by the principal into a completed work" is not "the manufacturer of the whole," see id. at 672, Louisiana law does not recognize the argument that incorporation of a product into a larger entity transforms that product for "work product exclusion" purposes. Moreover, we note that the non-Louisiana cases relied upon by the Appellants and Shakertown involve substantially more drastic "incorporation" than that which the siding has undergone. See Imperial Cas. & Indem. Co. v. High Concrete Structures, 858 F.2d 128 (3rd Cir. 1988) (converting raw steel into beveled washers); Firemen's Ins. Co. v. Bauer Dental Studio, Inc., 805 F.2d 324 (8th Cir. 1986) (converting manufacturer's gold crown into a patient's filling through dental workmanship); Aetna Cas. & Sur. Co. v. M&S Indus., Inc., 827 P.2d 321, 327 (Wash. App. Div. 2 1992) (converting "plywood panels into an entirely different product designed to contain poured concrete" in which the plywood "was only one component of the finished product"). Accordingly, the trial court did not err in rejecting this argument.

III. Coverage for Repair and Replacement as Reasonable Expenses

Appellants and Shakertown contend that the work product exception does not exclude from coverage the repairing and replacing of a defective product incorporated into a larger work;

and, thus, that the Policy covers the award of reasonable expenses. This proposition is directly contrary to Louisiana law. First, as as the trial court noted, the award for reasonable expenses is to compensate for the original installation and subsequent removal costs, not for repair and replacement of the defective siding. Second, the cases cited by the Appellants and Shakertown reiterate that work product exceptions properly exclude coverage for damage caused to the defective product itself. See Gardner v. Lakvold, 521 So.2d 818, 820 (La. App. 2nd Cir. 1988); Superior Steel, Inc. v. Bituminous Cas. Corp., 415 So.2d 354, 357 (La. App. 1st Cir. 1982). The award for reasonable expenses does no more than compensate the Appellants for the damage to the siding that resulted from their defective nature. Appellants' and Shakertown's argument is simply an incorrect reading of Louisiana law.

CONCLUSION

For the foregoing reasons we DISMISS the issue of litigation-related expenses for lack of appellate jurisdiction and AFFIRM the trial court's decision on all other counts.